STATE OF NEBRASKA, APPELLEE, v. WILLIAM OTTO, APPELLANT.

169 N. W. 2d 612

Filed July 25, 1969. No. 37161.

Donald R. Hays, Jr., for appellant.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is a criminal action which was tried in the district court for Lancaster County, Nebraska. The defendant was found guilty of motor vehicle homicide, sentence was suspended, and he was placed on probation for 18 months. He appeals, alleging error in instructions to the jury. We affirm the judgment of the district court.

The defendant was traveling north on Twenty-seventh Street in Lincoln, Nebraska, at approximately 6:45 p.m. on February 9, 1968. He was attempting a left-hand turn at the intersection of Twenty-seventh and W Streets when he collided with a police officer on a motorcycle. The police officer, Mr. George Welter, was traveling south on Twenty-seventh Street at between 40 and 45 miles per hour. He was exceeding the speed limit of 35 miles per hour and sounding his siren in response to a dispatch informing him that: "There is a report of a man down on 25th between 'Q' and 'P'." Neither the defendant nor members of his family in the defendant's automobile heard the siren or observed the officer on the motorcycle prior to impact. The officer died of his injuries moments later at a local hospital.

The defendant contends that the police officer in exceeding the speed limit was not within the speed limit exemptions enumerated in section 39-745, R. S. Supp., 1967, and that therefore he did not have the right-of-way. He therefore contends that the following instructions, which imply that the police officer had the right-of-way, were in error. Instruction No. 6 in its relevant portion required the jury to find the defendant guilty

if it found that defendant was operating his automobile unlawfully and that the proximate cause of the death of the police officer was: "(a.) * * * the defendant while operating his motor vehicle failed to yield the right-of-way to the driver of a police vehicle on official business while said driver was sounding an audible signal by siren on said police vehicle."

Instruction No. 11 states that: "You are instructed that the driver of a police department vehicle on official business, sounding an audible signal by siren, shall have the right-of-way, and the drivers of other vehicles shall yield such right-of-way to such police department vehicle. This does not, however, relieve the driver of such vehicle from the duty to drive with due regard to the safety of all persons using the highway, nor shall it protect the driver of such vehicle from operating the same in an arbitrary manner in the use of such highway."

Instruction No. 13 states that: "You are instructed that the driver of a police department vehicle on official business, sounding an audible signal by siren, has the right to exceed the speed limitations imposed by statute. However, a duty is imposed upon such driver to operate the said police vehicle in such a manner that he will not do so in reckless disregard to the safety of others."

The speed limit exemptions are enumerated in section 39-745, R. S. Supp., 1967: "The speed limitations set forth in Chapter 39, article 7, shall not apply (1) to vehicles when operated with due regard for the safety of others under the direction of the Nebraska State Patrol, any conservation officer, sheriff, member of any police department, or any other police officer, in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violation, (2) to fire department or fire patrol vehicles when traveling in response to a fire alarm, (3) to public or private ambulances when traveling in emergencies, or (4) Civil Defense rescue vehicles when traveling in response to a

fire alarm or emergency; Provided, the exemption herein shall not apply to bondsmen. This exemption shall not protect the driver of any vehicle exempted herein from the consequences of a reckless disregard of the safety of others."

The obvious purpose of the speed limit exemptions for emergency vehicles is to make it possible for those agencies who are able to provide emergency services to persons in need to reach those persons as fast as is reasonably possible. The police department is one agency which provides such a service. The statute should not be read so narrowly as to emasculate the effectiveness of police officers in emergencies by limiting their speed exemptions to situations where it is clear that the law has been violated and the suspected violator remains at large. Such an interpretation would emasculate the statute because in many cases proof could only come from the lips of the dead police officer. Clearly the term "apprehension of violators of the law" was designed to protect the police officer at the very time when speed was of the essence to enforce the law and to protect the public. This statute properly assumes that a police officer on duty is in the performance of his statutory duties and is designed to give some measure of protection to the initial risks and dangers he encounters in emergency situations. It gives protection during the apprehension or discovery of law violators. It is not designed to prohibit a police officer from appropriate action when that action is necessary. It would be absurd to hold that the intent of the statute was to limit his emergency action to the period of time subsequent to the apprehension and discovery of a law violator and during only the period of time when he was possessed of proof of such criminal activity. The police officer here was responding to a legitimate command and order from his superiors. Surely a defendant, within the meaning of the statute, should not be permitted to make a judgment or to risk an opinion on the legal significance of the

police officer's proper emergency activity. It is enough, as in this case, that the police officer knew of an emergency, for which he could render effective assistance, and was operating in response to a call for assistance. We find that the police officer was conducting an activity protected under section 39-745, R. S. Supp., 1967, was entitled to exceed the speed limit, and had the right-of-way.

The defendant also contends that not only must a police emergency vehicle have a signal sounding but that such signal must be actually heard by the operator before he is required to yield. He asks that we interpret the word "audible" as used in section 39-752, R. S. Supp., 1967, as requiring an actual hearing of the signal which would thereby strike down instruction No. 12 instructing that: "The term 'audible signal' as employed in these instructions means a signal capable of being heard, a signal which is heard, or in the exercise of ordinary care should have been heard."

This is the correct instruction. In Raymond v. Haught, 102 Ohio App. 337, 143 N. E. 2d 731, the court interpreted audible signal as the instruction by the trial court interpreted it. "To hold that the above mentioned section has no application simply because De Pew testified that he did not hear a signal would render the statute nugatory. 'Audible signal,' as used in Section 4511.27, Revised Code, means an adequate signal; a signal capable of being heard; a signal which is heard, or in the exercise of ordinary care should have been heard." Werner Transp. Co. v. Zimmerman, 201 F. 2d 687 (7th Cir.), and Clark v. Sterrett (Ind. App.), 220 N. E. 2d 779, also support the trial court's instruction.

The action of the district court in entering the jury verdict of guilty, suspending further proceedings and placing defendant on probation for 18 months, and overruling the motion for new trial is correct and is affirmed.

AFFIRMED.

McCown, J., dissenting.

I dissent. The degree of negligence or culpability

which is sufficient to convict an individual on a charge of motor vehicle homicide is difficult to define. "Obviously, it is not any slight breach of duty but rather a gross failure to do what is required of one." Delay v. Brainard, 182 Neb. 509 at page 514, 156 N. W. 2d 14.

The clear thrust of the majority opinion is that any unlawful operation of a motor vehicle is sufficient to convict the operator of motor vehicle homicide if the death of an individual results from it. This has not been and should not be the law. The conduct of the defendant here did not establish a reckless or careless disregard of, or indifference to, the rights and lives of other persons. He did fail to see and hear an approaching emergency vehicle which had the right-of-way. While this was a failure to yield the right-of-way, it was not motor vehicle homicide.

BOSLAUGH and SMITH, JJ., concur in this dissent.