FRANCIS S. MAPLE, APPELLANT AND CROSS-APPELLEE, V. CITY OF OMAHA, NEBRASKA, APPELLEE AND CROSS-APPELLANT.

384 N.W.2d 254

Filed March 28, 1986.   No. 84-747.

294

Thomas J. Culhane of Erickson & Sederstrom, P.C., for appellant.

Herbert M. Fitle, Omaha City Attorney, James E. Fellows, and Thomas O. Mumgaard, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

This is an action for personal injuries and property damages sustained in a collision between motorcyclist Francis S. Maple and a City of Omaha police cruiser driven by Officer Jesse Cortez. The bench trial took place on May 15 and 16, 1984, after which the district court for Douglas County dismissed plaintiff-appellant Maple's petition.

The accident occurred at 114th and Pacific Streets in Omaha on September 12, 1980, at approximately 7:30 a.m. Officer Cortez had been dispatched to the scene of a personal-injury automobile accident at 114th and Davenport and was proceeding eastward on Pacific, operating his red lights and siren, when he entered the intersection of 114th and Pacific. The officer slowed the cruiser to approximately 2 to 3 miles per hour to negotiate a left turn northward onto 114th Street. A fire engine, which was also operating its lights and siren, had just turned north onto 114th and Pacific, from the east side of the intersection, 8 to 10 seconds earlier.

Maple was traveling west on Pacific, about one block behind the firetruck. The east side of Pacific at its intersection with 114th Street is six lanes wide. Two lanes are south of a median for eastbound traffic. North of the median are a left turn lane, two lanes for through traffic, and one lane for right turn only. Maple was in the northernmost westbound through-traffic lane. Since the southernmost through-traffic lane was obstructed by two schoolbuses and another vehicle stopped at the green light, Maple did not see the police cruiser attempting to turn north.

Although he heard a siren, Maple proceeded into the intersection at 30 to 40 miles per hour, under the impression that the siren emanated solely from the firetruck. Officer Cortez

saw the motorcycle when it was 5 to 6 feet from the cruiser, a split second before the collision. Since he had his foot on the brake already, he was able to stop the cruiser before impact. Maple was 6 to 10 feet from the cruiser when he saw it, but was unable to swerve and avoid it.

Maple's motorcycle struck the police cruiser in front of the right front tire. Maple suffered a compound fracture of his left leg and a closed fracture of his left wrist.

In his second amended petition, Maple claimed that the City of Omaha was liable under the theory of respondeat superior, not only for alleged negligent acts of Officer Cortez but also for alleged negligent acts of the 911 emergency operators who, Maple contends, wrongfully dispatched Officer Cortez to the scene of the 114th and Davenport accident on a high priority basis. The City of Omaha denied Maple's allegations of negligence and claimed damages to its police cruiser, pleading that Maple was contributorily negligent for failing (1) to keep a proper lookout, (2) to have his motorcycle under control, and (3) to yield the right-of-way; and for entering the intersection at an excessive rate of speed.

The trial court made extensive findings of fact in rendering its decision for the defendant, City of Omaha. Most of Maple's assignments of error dispute these factual findings: (1) That one of the busdrivers heard the police siren and that Maple entered the intersection despite the presence of other vehicles stopped at a green light; (2) That Maple was negligent in traveling at the speed he did and that his speed was a proximate cause of the accident; (3) That Maple failed to keep a proper lookout and maintain control over his vehicle; (4) That the police cruiser was properly operating as an emergency vehicle at the time of the accident and that it had a right-of-way under Neb. Rev. Stat. § 39-608 (Reissue 1984); (5) That Maple was contributorily negligent for failing to hear the police siren or to distinguish it from the firetruck's siren; and (6) That Maple's contributory negligence was more than slight, and sufficient to bar recovery. Also assigned as error was the court's determination that the city's 911 emergency operators owed no duty of care to Maple as a member of the public at large.

On cross-appeal the city assigned as error the factual finding

that Officer Cortez was negligent in proceeding into the intersection without complete certainty that other drivers would yield the right-of-way, and the application of a common negligence standard to the officer's acts rather than the reckless disregard standard imposed by § 39-608(5).

Where evidence is in conflict and such that reasonable minds may draw different conclusions therefrom, the questions of negligence and comparative and contributory negligence are factual determinations. *Stephen v. City of Lincoln*, 209 Neb. 792, 311 N.W.2d 889 (1981).

In our review of a bench trial of an action at law, this court must consider the evidence in the light most favorable to the successful party, resolving all conflicts in his favor. That party is entitled to the benefit of every inference that can reasonably be deduced from the evidence. The findings of a trial court in a law action tried without a jury have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Crawford v. Ham*, 209 Neb. 802, 311 N.W.2d 896 (1981).

A review of the record reveals that Maple is correct in disputing the trial court's finding that one of the busdrivers heard the *police cruiser's* siren. Timothy Richardson testified that he did not hear the police siren but stopped when he saw the cruiser's red lights. Richardson did hear the firetruck's siren, and Samuel Cato, the other busdriver, testified that he heard a siren but was unable to identify its source.

In any event, both busdrivers reacted properly to the emergency vehicles by stopping their vehicles. Despite the trial court's misstatement of this fact, there was other evidence to support the court's finding that the police siren was audible. Other witnesses testified that they were able to hear the cruiser siren.

The record also reveals evidence to support the court's finding that Maple entered the intersection despite the presence of other vehicles stopped at a green light. Harriet Beckenhauer stated that she could see an impending collision, observing Maple passing vehicles stopped at the green light.

There was also sufficient evidence for the court to find that 30 to 40 miles per hour was an excessive speed for Maple under the circumstances. The findings that Maple failed to maintain

control of his motorcycle and to keep a proper lookout are related and equally supported by the record. If Maple had noticed that other cars were not moving through the green light, he might have reduced his speed and been able to swerve and avoid the collision. Working in tandem, these three acts of negligence were a proximate cause of Maple's injuries.

The trial court properly found that the police cruiser was operating as an emergency vehicle and that it had a right-of-way under § 39-608. In the definitional section of the Nebraska Rules of the Road, authorized emergency vehicle is defined as including "police vehicles." Neb. Rev. Stat. § 39-602(5) (Reissue 1984).

Neb. Rev. Stat. § 39-640 (Reissue 1984) provides:

(1) Upon the immediate approach of an authorized emergency vehicle which makes use of proper audible or visual signals:

(a) The driver of any other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the roadway, or to either edge or curb of a one-way roadway, clear of any intersection, and shall stop and remain in such position until such emergency vehicle passes, unless otherwise directed by any police or traffic officer; . . . .

. . . .

(2) This section shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.

Maple argues that the police cruiser was not an emergency vehicle because the automobile accident to which Officer Cortez was dispatched was not truly an emergency. He suggests that because of the 911 operator's alleged negligence in dispatching the officer on a high priority, the police cruiser was not entitled to the traffic privileges allowed an emergency vehicle.

The defendant in a criminal action for motor vehicle homicide made a similar argument in *State v. Otto,* 184 Neb. 597, 169 N.W.2d 612 (1969). The defendant requested a strict application of a statute which allowed a speed limit exemption

for police officers " 'in the chase or apprehension of violators of the law.' " This court found the exemption applied, as "[t]he police officer here was responding to a legitimate command and order from his superiors. . . . It is enough, as in this case, that the police officer knew of an emergency, for which he could render effective assistance, and was operating in response to a call for assistance." *Id.* at 600-01, 169 N.W.2d at 614-15.

A post hoc inquiry into the seriousness of the matter to which an emergency vehicle is dispatched to determine whether that vehicle was entitled to emergency privileges would not serve the purpose of § 39-640. A police officer must be allowed to rely on the emergency status of the dispatch for his or her own protection and that of the public. As long as such officer acts in good faith in operating emergency equipment, he or she enjoys the privileges provided in §§ 39-608 and 39-640.

The appellant argues, further, that Officer Cortez was not making use of "proper audible or visual signals" as required by § 39-640. Since the standard operating procedure of the Omaha Police Department instructs that police cruisers should operate rotating top red lights, siren, headlights, and spotlights when dispatched on an expedite call, Maple argues that the police cruiser was not entitled to emergency vehicle privileges unless the City of Omaha proved that Officer Cortez was operating all of this equipment at the time of the accident.

The record indicates that Officer Cortez was operating only red lights and a siren. Whether an authorized emergency vehicle is operating "proper audible or visual signals" under the statute is a factual question. Although the standard operating procedure is evidence of proper signals for given circumstances, it does not establish requirements as a matter of law. The trial court's determination that Officer Cortez was operating proper audible or visual signals was not clearly wrong; thus the court was not in error to find that the police cruiser had a right-of-way under § 39-640.

The trial court's determination that Maple was contributorily negligent for failing to hear the police siren or to distinguish it from the firetruck's siren was also supported by the evidence. Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty

which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of, as a proximate cause. *Stephen v. City of Lincoln*, 209 Neb. 792, 311 N.W.2d 889 (1981).

Since there was testimony at trial that Maple was wearing a hood under his motorcycle helmet and that other drivers at the intersection could hear the police siren, the trial court was not clearly wrong in finding that Maple was contributorily negligent in failing to hear or distinguish the police siren.

We also reject Maple's assignment of error disputing the trial court's finding that Maple's contributory negligence was more than slight, and sufficient to bar recovery. The question of comparative negligence is for the determination of the fact finder. *Stephen v. City of Lincoln, supra.* The trial court was not clearly wrong in its finding. This factual finding and those discussed above are affirmed.

In response to Maple's allegation that the City of Omaha's 911 operators caused his injuries in part by dispatching Officer Cortez on a higher priority than was required by the information reported, the trial court found that the operators owed no duty of care to Maple as a member of the public at large; thus there was no breach to form the basis of a negligence claim against them or the City of Omaha as their employer.

The court cited *Massengill v. Yuma County*, 104 Ariz. 518, 456 P.2d 376 (1969), among other authority, to the effect that a government official or employee owes no duty of care to the general public in the absence of an undertaking of a special or private duty. The Arizona Supreme Court has since rejected this doctrine in *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982).

In abandoning the doctrine in *Massengill*, the *Ryan* court stated in part as follows:

> We shall no longer engage in the speculative exercise of determining whether the tort-feasor has a general duty to the injured party, which spells no recovery, or if he had a specific individual duty which means recovery. [Citations omitted.] Thus, the parameters of duty owed by the state will ordinarily be coextensive with those owed by others.

134 Ariz. at 310, 656 P.2d at 599.

Appropriate to this discussion is an examination of our own Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1983). Section 23-2402, in defining a tort claim, makes reference to loss or damage "caused by the negligent or wrongful act or omission of any employee of the political subdivision, while acting within the scope of his office or employment, under circumstances where the political subdivision, *if a private person*, would be liable to the claimant . . . ." (Emphasis supplied.)

Limitations are found in § 23-2409 which exclude acts based on the execution of a statute, discretionary functions, assessment or collection of taxes, establishment of a quarantine, or assault and battery. Nowhere is there found an exemption for the exercise of a duty owed to the public generally.

*Ryan* cited two recent Florida cases which paraphrased language from *Commercial Carrier Corp. v. Indian River Cty.*, 371 So. 2d 1010 (Fla. 1979), referring to criticism from courts and commentators concerning the "governmental-proprietary" and "special duty-general duty" analysis of sovereign immunity and holding that the failure to properly maintain an existing traffic control device was an operational duty which permitted filing of a suit against a governmental entity.

Appellee cites us to *Trautman v. Stamford*, 32 Conn. Supp. 258, 350 A.2d 782 (1975), as supporting the special duty-general duty dichotomy. However, that case relied, in part at least, on *Massengill*.

New York still follows the general-duty exemption as expressed in *DeLong v County of Erie*, 89 A.D.2d 376, 455 N.Y.S.2d 887 (1982). *Trezzi v City of Detroit*, 120 Mich. App. 506, 328 N.W.2d 70 (1982), is listed by appellee as supporting this same view. However, in *Trezzi*, the Michigan statute exempted governmental agencies from tort liability while engaged in governmental functions, and the court held that operating a "911 emergency system" was a governmental function.

In any event, we are persuaded by the reasoning of the Arizona court in *Ryan*. However, as noted in *Ryan*, the plaintiff

still must show that a duty was owed to him, that this duty was breached, and that an injury was proximately caused by that breach.

In the instant case Officer Cortez was dispatched on an "expedite" level, which authorized him to operate his cruiser as an emergency vehicle. Officer Caniglia, the 911 operator, received a call from a Dr. O'Neil, who reported "[t]here's been an accident down here just south of 114th and Davenport East, by the new fabric center and there's a two car accident, a couple of people not hurt badly, but need an ambulance and a police unit."

Following standard operating procedure, the call was then transferred to a fire and rescue operator. After the call was transferred the fire and rescue operator questioned Dr. O'Neil further, and he explained that a car was on fire and asked again for police and an ambulance, as a woman was injured. The district police dispatcher received a dispatch card within a minute of the original call, and it was his duty to dispatch a cruiser and determine the level of dispatch. Upon receiving the card, and himself hearing the fire and rescue operator sending a fire engine and rescue squad, he dispatched the officer on an expedite basis.

Plaintiff argues that the 911 operator was negligent in not questioning Dr. O'Neil in more detail so as to determine with more certainty the level of dispatch required. However, as stated by Officer Caniglia during his testimony,

When he said the three words, "not hurt badly," I didn't think they were going to send one. But then he comes right back and said to send an ambulance, and there's the doctor saying "send an ambulance," you don't question that any further because if you're going to stop to question a doctor, you might as well forget it.

Interestingly enough, several of the cases cited by the parties from other jurisdictions claimed liability on the municipality because of a delay in dispatching an emergency vehicle.

There is no credible evidence in this record that the 911 dispatchers, or others, acted improperly or imprudently in dispatching Officer Cortez on an emergency basis. Therefore, as a matter of law, although for a different reason, we agree

with the trial court that no liability attached to the city because of the actions of the dispatchers.

For its cross-appeal the City of Omaha contends that the trial court was in error in finding that it was contributorily negligent in a degree sufficient to bar its recovery. This involves the court's finding that Officer Cortez was held to a standard of due care rather than the reckless disregard standard and, accordingly, was negligent in proceeding into the intersection without complete certainty that plaintiff would yield the right-of-way granted his emergency vehicle.

We are thus required to interpret the legal significance of the involved statutes and, further, to determine whether there is any evidence to support the trial court's determination.

The City of Omaha argues that under § 39-608(5) the trial court incorrectly applied a negligence standard entitled "Authorized emergency vehicles; privileges; conditions," holding a driver of an emergency vehicle liable for a breach of due regard rather than the less stringent standard for reckless disregard. That statute provides:

> (5) The provisions of this section shall not relieve the driver of such emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect such driver from the consequences of his reckless disregard for the safety of others.

Essentially, the city contends that emergency vehicle drivers should be held liable for reckless disregard but not for breach of due regard. Such a reading of the statute, however, renders meaningless the duty of due regard which the Legislature sought to impose. The imposition of a duty of due regard would be nugatory if one who neglected that duty were not held liable for that breach. Where words of a statute are plain and unambiguous, no interpretation is needed to ascertain their meaning, and in the absence of anything to indicate the contrary, words will be given their ordinary meaning. *Kellogg Company v. Herrington*, 216 Neb. 138, 343 N.W.2d 326 (1984).

Granted, the reckless disregard clause adds little if one is held liable for a breach of due regard. It goes without saying that if one is liable for breach of due regard, he or she is surely liable for reckless disregard. Nevertheless, the statute clearly imposes

a duty of due regard upon the drivers of emergency vehicles, and in a negligence action their conduct will be measured against that of a reasonable person exercising due care under the same emergency circumstances.

If § 39-608(5) were not interpreted to impose a duty of due regard or due care, it would be difficult to reconcile with § 39-640, which makes no mention of reckless disregard in a clause similar to § 39-608(5). Section 39-640(2) sets out the circumstances under which other drivers must yield the right-of-way to an emergency vehicle and is applicable in many of the same situations as § 39-608: "(2) This section shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."

Reading these two statutes together, we believe that the Legislature intended to impose a duty of due regard or due care upon emergency vehicle drivers and that they should be held liable for breaches of such duty.

The trial court states that since the officer's view of the northernmost through-traffic lane was obstructed, the officer should have waited either until a vehicle stopped in that lane or until the green light for east-west traffic turned red before executing his left turn. The question which we must determine is whether there was any credible evidence supporting the trial court's conclusion that Officer Cortez failed to exercise due regard or due care under the circumstances.

Maple argues that this finding is consistent with *Hammon v. Pedigo*, 173 Neb. 787, 799, 115 N.W.2d 222, 228 (1962), in which we quoted a Kentucky decision:

"The provision exempting an emergency vehicle from ordinary traffic regulations confers no absolute immunity upon the driver, for it is based on the prescribed conditions. Nor does the preferential status relieve the driver from the duty of having due regard for the safety of other people lawfully using a street or highway. The duty is measured by the danger to be apprehended. Notice and warning to persons required to yield the right of way is essential, and a reasonable opportunity to yield or get out of the way is necessary before they become chargeable

with the obligation to give preference to the emergency vehicle. . . ."

(Quoting *Gasparac v. Castle*, 330 S.W.2d 111 (Ky. 1959).)

Appellant apparently interprets this passage to relieve drivers from the duty to yield the right-of-way to emergency vehicles unless they actually see emergency lights or hear a siren. Such an interpretation is inconsistent with § 39-640 and ignores that part of the quoted passage requiring " 'due regard for the safety of other people *lawfully* using a street or highway.' " (Emphasis supplied.)

That statute does not condition the right-of-way on other drivers' perception of emergency equipment. And since we have affirmed the district court's findings of negligence on Maple's part, it can hardly be said that Maple was using the streets "lawfully."

We have held repeatedly that a driver's failure to see one favored over him under the rules of the road is negligence as a matter of law. *Mitchell v. Kesting*, 221 Neb. 506, 378 N.W.2d 188 (1985); *Stephen v. City of Lincoln*, 209 Neb. 792, 311 N.W.2d 889 (1981); *Bonnes v. Olson*, 197 Neb. 309, 248 N.W.2d 756 (1976); *Nichols v. McArdle*, 170 Neb. 382, 102 N.W.2d 848 (1960).

The great weight of the evidence demonstrates that Officer Cortez was extremely cautious in attempting a left turn onto 114th Street. The trial court's finding that Officer Cortez, and consequently the City of Omaha, was negligent in proceeding through the intersection, under the circumstances of this case, was clearly wrong.

The City of Omaha was entitled to recover its damages proximately resulting from Maple's negligence. The judgment of the district court to the contrary is reversed and that part of the cause is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.