STATE OF NEBRASKA, APPELLEE, V.
MERRITT G. BROWN, APPELLANT.

603 N.W.2d 456

Filed December 17, 1999.   No. S-98-352.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Merritt G. Brown was convicted by the county court, pursuant to a jury verdict, of motor vehicle homicide in violation of Neb. Rev. Stat. § 28-306(1) (Reissue 1995) for unintentionally causing the death of another person while driving his motor vehicle in violation of Neb. Rev. Stat. § 60-6,148(2) (Reissue 1998) in that Brown had failed to yield the right-of-way to the victim's vehicle. Brown was sentenced to 12 months' probation and was fined $500. Brown appealed to the district court, which affirmed his conviction and sentence. Brown then appealed to the Nebraska Court of Appeals, which affirmed the judgment of the district court. Brown petitioned this court for further review, which was granted.

## FACTUAL BACKGROUND

On October 8, 1996, Brown was traveling south on Evergreen Road in Buffalo County when he came to a stop sign at the intersection of Evergreen Road and U.S. Highway 30. Brown stopped at the stop sign and prepared to turn left onto the highway. The time was between 4:30 and 5 a.m., and the sky was still dark. There were no obstructions interfering with Brown's view of the oncoming traffic on the highway.

Brown waited for two passing vehicles and then pulled out into the intersection. At the time, a westbound pickup truck driven by Gary Stauffer was approximately 100 to 200 feet away. Stauffer's vehicle collided with Brown's vehicle, and Stauffer was killed.

Brown was charged with motor vehicle homicide, on the theory that he had unintentionally caused the death of another person while driving his motor vehicle in violation of § 60-6,148(2) by failing to stop his vehicle at the point nearest the intersecting roadway, where Brown had a view of approaching traffic before entering the intersection, and by failing to yield the right-of-way to a vehicle that had entered the intersection from another highway or was approaching closely on such highway so as to constitute an immediate hazard. Brown defended by presenting evidence that Stauffer's vehicle had not been visible to Brown because Stauffer's headlights were not working properly. This was the central issue at trial.

At trial, Brown testified that Stauffer's headlights had not been visible at the time of the accident. The relevant testimony is as follows:

Q- [Defendant's counsel] Showed the location of the vehicle number 1 [Stauffer's vehicle]. To the best of your recollection would that have been generally where it would of been located in the road north to south?

A- [Defendant] I have no idea.

. . . .

A- I have no idea. I didn't see the vehicle at all.

Q- Were there any headlights from the west that you saw — from the east that you saw after the pickup went by?

A- No, no there was not.

. . . .

Q- When you looked towards Kearney, did you see one set of headlights or did you see more than one set of headlights?

A- One.

Q- And was that the pickup that went by you?

A- Yes.

In addition, Brown presented evidence that Stauffer's alternator and voltage regulator were broken. Richard Ostrander testified that there was a hole in the voltage regulator, and it did not appear that anything in the pickup itself had pushed a hole into that device. Todd Thorell testified that upon testing the alternator after the accident, he discovered that it was putting out a current of "30 to 35 amp[s]," although it was supposed to be emitting "55 [amps]." Thorell also testified that although the voltage regulator should have tested at 13.8 to 15.2 volts, it tested at only 13.2 volts, a low result. On cross-examination, the State elicited testimony suggesting that these systems could have been damaged in the accident, rather than before.

The State then offered two rebuttal witnesses, Roger Swearingen and Lowene Jacobs. Swearingen, who owned a salvage business, sold the pickup to Stauffer 3 weeks before Stauffer's death, and Swearingen testified that he had never had any problems with the headlights and had told Stauffer to contact him regarding any problems with the pickup. Stauffer did contact him, but only because he wanted mud flaps. The previous owner of the pickup, Jacobs, testified that she had experienced no problems with the headlights.

The jury was instructed in the language of several statutory provisions, including § 60-6,148(2) and the statutes that establish the duty of a vehicle operator to maintain functional headlights. The relevant portion of the elements instruction (instruction No. 3) provided:

The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict the defendant of the crime charged are:

(1) The defendant, Merritt G. Brown, was engaged in the unlawful operation of a motor vehicle; and

(2) That such unlawful operation of a motor vehicle consisted of failing to yield right of way to a vehicle that had entered the intersection from another highway or was approaching so closely on such highway so as to constitute an immediate hazard, in violation of section 60-6,148; and

(3) That such unlawful operation of a motor vehicle was a proximate cause of the death of Gary Stauffer; and

(4) That the death of Gary Stauffer was caused unintentionally; and

(5) That these events occurred on or about October 8, 1996, in Buffalo County, Nebraska.

Brown proffered an alternative to this instruction, which was refused by the trial court. The relevant portion of Brown's proffered instruction stated:

The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict the Defendant of the crime charged are:

(1) The Defendant, on or about October 8, 1996 did cause the death of Gary Stauffer.

(2) The cause of death of Gary Stauffer was unintentional while the Defendant was engaged in the unlawful operation of a motor vehcile [sic].

(3) The unlawful operation of the Defendant's vehicle, if any, consisted of:

a. After having stopped at a stop sign, the Defendant proceeded into the intersection;

b. That Gary Stauffer's vehicle had entered the intersection prior to the Defendant entering the instersection [sic]; or

c. At the time the Defendant entered the intersection, Gary Stauffer's vehicle was appraoching [sic] the intersection so closly [sic] as to constitute an immediate hazard if the Defendant moved across or into such intersection.

d. Gary Stauffer's vehcle [sic] or headlights was visible.

(4) The above described events all took place in Buffalo County, Nebraska.

After his conviction, Brown filed a motion for new trial on the basis of newly discovered evidence. Brown offered the affidavit of Robert Peters, who averred that during the time between

Stauffer's purchase of the pickup and the accident, he heard Stauffer tell another person who had asked Stauffer for a ride, "I can't take you because I don't have enough battery," and that several days after this statement, Stauffer told Peters that he needed to put a new alternator in the vehicle. The motion for new trial was overruled.

After sentencing, Brown's conviction was affirmed by both the district court and the Court of Appeals. The Court of Appeals, in an unpublished opinion, stated that "it would have been preferable for the jury to have been directly instructed" on the issue whether Stauffer's vehicle was visible to Brown, but concluded that the instructions given addressed the issue "in an indirect fashion." The Court of Appeals relied on the instructions (1) that the jury was to apply the general knowledge that it could be presumed to have regarding the legal responsibility of a driver to have operating headlights, (2) that a reasonable doubt is based on reason and common sense, and (3) that the jury must find that Stauffer's vehicle was approaching so closely on such highway as to constitute an immediate hazard. Consequently, the Court of Appeals determined that the jury instructions given adequately covered the issues and that no prejudicial error had occurred. See *State v. Brown*, No. A-98-352, 1999 WL 1337643 (Neb. App. Mar. 16, 1999) (not designated for permanent publication).

Brown petitioned for further review, which we granted.

## ASSIGNMENTS OF ERROR

In his petition for further review, Brown assigned that the Court of Appeals erred in (1) determining that the trial court properly instructed the jury on Brown's defense, (2) failing to order a new trial based on newly discovered evidence, and (3) failing to find that the State's rebuttal evidence should have been excluded.

## STANDARD OF REVIEW

Whether a jury instruction given by a trial court is correct is a question of law. *State v. Brown, ante* p. 330, 603 N.W.2d 419 (1999). In an appeal based on the claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Id.*

## ANALYSIS

Brown contends that the trial court erred by failing to instruct the jury that in order to be criminally responsible for failure to yield the right-of-way to another vehicle, the other vehicle must be capable of being seen by the defendant under the existing conditions.

It is the duty of a trial judge to instruct the jury on the pertinent law of the case, whether requested to do so or not, and an instruction or instructions which by the omission of certain elements have the effect of withdrawing from the jury an essential issue or element in the case are prejudicially erroneous. *State v. Brown, supra; State v. Greer,* 257 Neb. 208, 596 N.W.2d 296 (1999).

Jury instructions must be read as a whole, and if they fairly present the law so that the jury could not be misled, there is not prejudicial error. *Id.*

We have long held that contributory negligence is not a defense to the charge of motor vehicle homicide. *State v. Ring,* 233 Neb. 720, 447 N.W.2d 908 (1989); *State v. William,* 231 Neb. 84, 435 N.W.2d 174 (1989); *State v. Rotella,* 196 Neb. 741, 246 N.W.2d 74 (1976). However, the Due Process Clause of the 14th Amendment guarantees a criminal defendant the right to fairly present his or her defense at trial. U.S. Const. amend. XIV, § 1. See, also, Neb. Const. art. I, § 3. To determine if due process was achieved at Brown's trial, we must decide whether the jury instructions, when read as a whole, fairly present the law so that the jury could not be misled on the essential issue or elements of the crime charged.

As noted previously, the contested instruction on appeal is No. 3; the instruction given did not provide that in order to violate the failure to yield statute, the victim's car must be visible or reasonably capable of being seen. In Brown's proposed jury instruction, the State must prove that Brown unlawfully operated his vehicle and this unlawful operation consisted of failing to yield to a vehicle which was visible to Brown.

These conflicting instructions point to the core issue of this appeal: Can a driver "fail to yield" to another vehicle that the driver could not reasonably see? For the reasons that follow, we answer in the negative and conclude that the visibility of

Stauffer's vehicle is a factual question to be answered by a properly instructed jury.

There are two statutes at issue here. Section 28-306(1) provides: "A person who causes the death of another unintentionally while engaged in the operation of a motor vehicle in violation of the law of the State of Nebraska or in violation of any city or village ordinance commits motor vehicle homicide." In this case, Brown's alleged unlawful operation of a motor vehicle was failure to yield to Stauffer's pickup, in violation of § 60-6,148(2). Section 60-6,148(2) provides:

Except when directed to proceed by a peace officer or traffic control signal, every driver of a vehicle approaching an intersection where a stop is indicated by a stop sign shall stop at a clearly marked stop line or shall stop, if there is no such line, before entering the crosswalk on the near side of the intersection or, if no crosswalk is indicated, at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, such driver shall yield the right-of-way to any vehicle which has entered the intersection from another highway or which is approaching so closely on such highway as to constitute an immediate hazard if such driver moved across or into such intersection.

The language of § 60-6,148(2) obviously does not state whether a driver can fail to yield to a vehicle that he or she cannot reasonably see, and we have not addressed this issue in a criminal context. In negligence actions, by contrast, we have fashioned rules which allow for instructions regarding the non-visibility of another vehicle. For example, failure to have working headlights could support an instruction regarding contributory negligence. The rule in such actions is that where the driver of a turning vehicle does not see an approaching automobile because of unusual conditions or circumstances, or sees the approaching vehicle and erroneously misjudges its speed or distance, or for some reason assumes that he or she can safely complete the turn, then a question for the jury is presented, and negligence of the turning driver is not presumed as a matter of law. See, e.g., *Melick v. Schmidt*, 251 Neb. 372, 557 N.W.2d 645

(1997); *Huntwork v. Voss*, 247 Neb. 184, 525 N.W.2d 632 (1995); *Petersen v. Schneider*, 153 Neb. 815, 46 N.W.2d 355 (1951), *modified* 154 Neb. 303, 47 N.W.2d 863 (1951). We have also said that where a vehicle strikes a parked car or other obstruction on the road, it is negligence as a matter of law unless the object cannot, for sufficient reasons, be observed by the exercise of ordinary care in time to avoid the collision. See *McClellen v. Dobberstein*, 189 Neb. 669, 204 N.W.2d 559 (1973).

■ We have not, however, addressed this issue in the context of a criminal trial. We do note that failure to specifically instruct the jury that the approaching vehicle must or should reasonably be visible to a driver to be convicted of failure to yield creates a situation in which a jury could find a criminal defendant guilty simply by virtue of making a turn in front of another vehicle, regardless of whether the other vehicle was visible or whether the defendant could have done anything to avoid the accident. This reading of § 60-6,148(2), in effect, creates a strict liability offense. Because penal statutes are given a strict construction which is sensible and prevents injustice or an absurd consequence, see *State v. White*, 254 Neb. 566, 577 N.W.2d 741 (1998), we ultimately reject this construction. Through a careful interpretation of § 60-6,148(2), we conclude that a driver cannot violate § 60-6,148(2) by failing to yield to a vehicle he or she did not or could not see in the exercise of reasonable care. Therefore, Brown was entitled to a specific instruction on that point, and the lower court's refusal to give an instruction regarding the alleged nonvisibility of Stauffer's vehicle violated Brown's right to a fair trial.

The statute itself reveals that the approaching vehicle must have been seen or should have been seen by the driver in order for the driver to fail to yield to that other vehicle. Section 60-6,148(2) requires that a driver approaching an intersection should stop at a clearly marked stop line or, if there is no clearly marked stop line, a driver must stop immediately before entering the nearest crosswalk. However, if there is no stop line or crosswalk, the driver shall stop "at the point nearest the intersecting roadway *where the driver has a view of approaching traffic on the intersecting roadway before entering the intersec-*

*tion."* (Emphasis supplied.) See, also, *Salazar v. Nemec*, 253 Neb. 298, 570 N.W.2d 366 (1997) (approving instructions concerning § 60-6,148(2)). The intersection here did not have a stop line or crosswalk, so Brown was required by statute to stop at the point nearest the intersecting roadway where he had a view of approaching traffic on Highway 30. Clearly, if Stauffer did not have his vehicle's lights on, there is no point at which Brown could have viewed approaching traffic because Stauffer's vehicle would not have been visible to him and Brown could not logically have violated the provisions of the statute.

Section 60-6,148(2) implies a "seen or should have seen" standard. We refuse to read § 60-6,148(2) to require a driver to wait indefinitely at an intersection before he or she dare undertake to cross the road during nighttime hours. Such a construction would defeat a significant purpose of the Nebraska Rules of the Road: to increase the efficiency of our streets and highways. See Neb. Rev. Stat. § 60-602(5) (Reissue 1998). If a driver exercises reasonable care to see what should be seen, the requirements of § 60-6,148(2) have been satisfied.

Our interpretation of § 60-6,148(2) requiring a seen or should have seen requirement has been implicitly approved in Nebraska, in reference to emergency vehicles. In *State v. Otto*, 184 Neb. 597, 169 N.W.2d 612 (1969), a police officer was sounding his siren and speeding when he collided with an automobile driven by the defendant, and the police officer died. The defendant was convicted of motor vehicle homicide, and he appealed. Otto argued that "audible" in the emergency vehicle statute means that the driver actually hear the signal of the emergency vehicle, but we rejected that argument. See Neb. Rev. Stat. § 60-6,151 (Reissue 1998). Instead, we approved of the instruction that defined audible as " 'a signal capable of being heard, a signal which is heard, or in the exercise of ordinary care should have been heard.' " *State v. Otto*, 184 Neb. at 601, 169 N.W.2d at 615. The relevant part of the emergency vehicle statute provides:

> (1) Upon the immediate approach of an authorized emergency vehicle which makes use of proper audible or visual signals:

(a) The driver of any other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the roadway or to either edge or curb of a one-way roadway, clear of any intersection, and shall stop and remain in such position until such emergency vehicle passes unless otherwise directed by any peace officer[.]

§ 60-6,151(1)(a).

Although §§ 60-6,151 and 60-6,148(2) are different statutes, they are both integral parts of the Nebraska Rules of the Road. Statutes relating to the same subject matter will be construed so as to maintain a sensible and consistent scheme so that effect is given to every provision. *State ex rel. City of Elkhorn v. Haney*, 252 Neb. 788, 566 N.W.2d 771 (1997). Additionally, Neb. Rev. Stat. § 60-604 (Reissue 1998) provides, "The Nebraska Rules of the Road shall be so interpreted and construed as to effectuate their general purpose to make uniform the laws relating to motor vehicles." In accordance with these principles of statutory interpretation, since the emergency vehicle statute requires that the emergency vehicle "was or should reasonably have been heard," to be consistent within interpreting that section of the code as a whole, we conclude that § 60-6,148(2) must also be interpreted to mean that the vehicle to be yielded to was or could reasonably have been seen in order for a driver to be held criminally responsible for motor vehicle homicide for failure to yield.

The requirement that a driver must see or should reasonably have seen the approaching vehicle to be convicted of motor vehicle homicide due to a failure to yield is consistent with existing jurisprudence regarding negligence cases. Since a party in a civil case is entitled to, at the very least, an instruction regarding the visibility or nonvisibility of another vehicle, due process demands that a criminal defendant, under the more exacting beyond a reasonable doubt standard, should similarly be entitled to such an instruction. The trial court committed prejudicial error in failing to so instruct in the instant case.

## CONCLUSION

For the foregoing reasons, we conclude that the trial court's refusal to instruct the jury regarding the visibility of Stauffer's

vehicle denied Brown his due process right to a fair trial; thus, we need not address Brown's other assignments of error. Because we determine that there was reversible error by the county court, we reverse the judgment of the Court of Appeals and remand this cause with directions to reverse the judgment of the district court and remand this cause to the county court for a new trial.

REVERSED AND REMANDED WITH DIRECTIONS.

McCORMACK, J., participating on briefs.