WILLIAM S. STEPHEN AND DEBRA STEPHEN, APPELLANTS, V.
CITY OF LINCOLN ET AL., APPELLEES.

311 N.W.2d 889

Filed October 30, 1981. No. 43490.

Herbert J. Friedman and James E. Dunlevey of Friedman Law Offices for appellants.

Richard D. Sievers of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

The appellants, Williams S. Stephen and Debra Stephen, husband and wife, appeal from the jury verdict finding against the Stephens and in favor of the appellee Lawrence G. Olson, a police officer employed by the City of Lincoln. They likewise appeal from a finding made by the District Court of Lancaster County, Nebraska, in favor of the City of Lincoln (City) and against the Stephens in an action simultaneously brought by the Stephens against the City under the provisions of the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1977), which grew out of the same events giving rise to the suit against Olson. The basis of appellants' appeal is that the trial court erred in sustaining defendants' motion in limine, and in refusing to permit the introduction into evidence by plaintiffs of police department procedural memoranda; in submitting to the jury for its consideration acts of alleged contributory negligence committed by plaintiff William S. Stephen, and in giving to the jury certain instructions, objected to by plaintiffs' counsel, relating to the acts of contributory negligence; and, finally,. in overruling plaintiffs' motion for a directed verdict on the question of liability. We believe that the assignments of error are without merit and the judgment of the trial court dismissing the action must be affirmed.

On July 4, 1978, Lawrence Olson was assigned as a cruiser officer patrolling a district which included downtown O Street in Lincoln, Nebraska. At approximately 3:30 p.m. on that afternoon he received a call

from a police dispatcher in response to a burglary alarm on the 6th floor of the Terminal Building located at 9th and O Streets in the City of Lincoln. The traffic on this particular holiday was described as light to moderate. At the time of the dispatch Officer Olson was at 10th and New Hampshire Streets. He activated his red lights, checked to see that they were working, turned on the siren, and proceeded south on 9th Street. Defendant Olson was approximately 3 to 4 blocks from the location of the alarm when he turned off his siren in order not to alert the suspected criminal of his approach, but left his rotating red lights on. As he proceeded southbound on 9th Street he encountered two red traffic signals which he navigated successfully, as his was the only vehicle present. The officer came to a complete stop at the third red light, at 9th and O Streets, and waited for the eastbound and westbound traffic on O Street to stop for him even though it had the green light. After it had stopped, he proceeded to turn onto O Street, reaching a maximum speed of 5 m.p.h. The police cruiser cleared the front end of a westbound vehicle which had stopped for it, at which time defendant Olson saw plaintiff approaching westbound on his motorcycle. Olson testified that Mr. Stephen was not looking directly forward but finally did turn and look at the cruiser, which had come to a complete stop. Stephen swerved violently to the left and hit the front end of the cruiser.

Plaintiff had turned onto O Street at 10th Street and observed the light for 9th and O Streets 1 block to the west to be green. Plaintiff further observed a police car, with red lights flashing, stopped in front of the Terminal Building and all east-west traffic at the intersection that he was approaching stopped in spite of the green light. Plaintiff, however, accelerated through the block up to 30 m.p.h.

The chief of police testified that officers are to follow the "procedure" portion of a document prepared by the police department, entitled "Emergency Calls for

Service." Officer Olson responded to this call using red lights and siren. As he approached 9th and O Streets he turned off the siren, which was in accord with the "procedure."

We turn first to appellants' contention that the trial court erred in not permitting a certain document to be received into evidence. The document offered into evidence by appellants, identified as exhibit B, was entitled "Emergency Calls for Service—Dispatching Procedure, Code Definition, Use of Emergency Equipment, Vehicle Operation." The document consisted of several parts. The first part was entitled "Purpose," and explained the purpose of the document. The second portion was entitled "Discussion," and consisted of an explanation of the problems confronted by an emergency vehicle when answering a call. The third portion was entitled "Authority," and purported to set out the statutory authority for emergency vehicles, first by state statute and then by city ordinance. The last section was entitled "Procedure," and advised the officer as to the actual procedure to be used, depending upon the nature of the call.

Appellants sought to introduce the entire document, including a portion of the discussion section which read as follows: "A review of the complaints received by the Internal Affairs Unit has involved all of the areas discussed, and too, a study submitted by the Fleet Safety Committee has prompted their recommendation that the use of flashing red lights without activating the siren should be prohibited on emergency runs." The record is unclear as to just who makes up the Internal Affairs Unit or the Fleet Safety Committee. The record does, however, establish that this recommendation by the Fleet Safety Committee was not accepted by the police department and was never made a part of the procedure. Appellants sought to offer the entire document in evidence to prove that the officer had violated the department's own procedures by turning off his siren. While it is unclear from the record how omitting

the discussion portion of the procedure prejudiced appellants in view of the fact that the procedural portion was admitted in evidence, it is clear that the trial court did not exceed its discretion in denying to appellants the right to introduce hearsay statements, made by an unidentified group and rejected by the police department, for the purpose of establishing procedures to be followed by the police department.

Unless excepted by some specific provision of law, only relevant evidence is admissible at trial. Neb. Rev. Stat. §§ 27-401 and 27-402 (Reissue 1979). We have frequently had occasion to consider a trial court's refusal to admit irrelevant evidence, saying: "'The exercise by the trial court of its discretion in ruling on the admission or rejection of evidence will generally not be reviewed by an appellate court, unless it is clearly or plainly shown that the trial court abused its discretion.

"'Application of this principle has been made to rulings relating to the reception of evidence the admissibility of which turns upon its relevancy, evidence collateral to the main issue, or which bears remotely on issues involved; and to rulings relating to cumulative evidence, opinion evidence, evidence concerning a matter of common knowledge, and evidence which is otherwise competent but is claimed to have a tendency to excite undue prejudice.'" *Westover v. Kerr*, 168 Neb. 494, 498, 96 N.W.2d 421, 424 (1959). See, also, *Duffy v. Physicians Mut. Ins. Co.*, 191 Neb. 233, 214 N.W.2d 471 (1974).

Appellants argue that police department memoranda are relevant and admissible. Under certain circumstances and with proper foundation being laid, we agree with that claim. Such, however, is not the case here. The trial court admitted the relevant portions of the police memoranda into evidence. It was the irrelevant portion which was excluded. Appellants have failed to point out to us, and we are unable to discern on our own, how the rejected statements of a committee whose origin and official capacity is not shown constituted an abuse of

discretion by the trial court. The assignment must be rejected.

Appellants' second assignment of error, to the effect that the trial court erred in submitting acts of contributory negligence by plaintiff to the jury, is likewise unsupported by the record. The trial court instructed the jury that the defendant Olson maintains that plaintiff was contributorily negligent with regard to one or more of certain specific acts, to wit, failing to keep a proper lookout; failing to have his vehicle under reasonable control; failing to yield the right-of-way to an emergency vehicle; traveling at a speed in excess of that reasonable and prudent under the circumstances. In *Wertz v. Lincoln Liberty Life Ins. Co.*, 152 Neb. 451, 457, 41 N.W.2d 740, 744 (1950), we noted from the Restatement of Torts as follows: "'Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause, cooperating with the negligence of the defendant in bringing about the plaintiff's harm.'

" . . . 'The plaintiff's contributory negligence may be either

"'(a) an intentional and unreasonable exposure of himself to danger created by the defendant's negligence of which danger the plaintiff knows or has reason to know, or

"'(b) conduct which, in respects other than those stated in Clause (a), falls short of the standard to which the reasonable man should conform in order to protect himself from harm.'"

And in *Heinis v. Lawrence*, 160 Neb. 652, 657, 71 N.W.2d 127, 130 (1955), we said: """"Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate

cause.' * * * See Eaton v. Merritt, 135 Neb. 363, 281 N.W. 620. Want of ordinary care, and not knowledge of the danger, is the test of contributory negligence. * * *"'"

Further, in *Ellingson v. Dobson Brothers Constr. Co.*, 173 Neb. 659, 662, 114 N.W.2d 522, 525 (1962), we said: "'Where evidence is in conflict and such that reasonable minds may draw different conclusions therefrom, the questions of negligence and comparative and contributory negligence are for the determination of the jury.' Parks v. Metz, 140 Neb. 235, 299 N.W. 643. See, also, Grantham v. Watson Bros. Transp. Co., 142 Neb. 362, 6 N.W.2d 372."

While the instruction did not direct the jury to make any finding regarding the matter of contributory negligence, there was sufficient evidence from which the jury could reach that conclusion. With respect to speed, the testimony was that the speed limit between 9th and 10th on O Street was 25 m.p.h. By deposition, Stephen testified that he had accelerated up to 30 m.p.h. as he approached the accident scene. Accordingly, there was evidence of excessive speed. With regard to the failure to yield the right-of-way to emergency vehicles, the record contains abundant evidence upon which the jury could conclude that the defendant Olson was in fact operating an emergency vehicle and plaintiff failed to yield the right-of-way to it. There was likewise sufficient evidence from which the jury could conclude that plaintiff traveled a full city block in the face of a continuous green light with traffic stopped, thereby knowing something was amiss. There was further testimony that the cruiser could have been observed by plaintiff from his motorcycle in time to stop. From this evidence the jury could have found Stephen guilty of contributory negligence on any one or more of the points claimed and that his contributory negligence was the proximate cause of his injury. It is the duty of the trial court to submit to the jury all material issues presented by the pleadings which find support in the evidence adduced. *Jarosh v. Van Meter*, 171 Neb. 61, 105 N.W.2d

531 (1960). The second assignment of error must likewise be overruled.

We turn then to appellants' final assignment of error, that the trial court erred in failing to direct a verdict in favor of the Stephens on the question of liability. Appellants argue that if a driver fails to see one which is favored over him under the rules of the road he is guilty of negligence as a matter of law, relying upon our decision in *Bonnes v. Olson*, 197 Neb. 309, 248 N.W.2d 756 (1976). The difficulty with that argument, however, is that under the circumstances in this case Stephen was not the favored vehicle. Quite to the contrary, the police car operating as an emergency vehicle was favored over Stephen. Although Stephen had the green light, if the officer did not disregard the safety of others on the street, the emergency vehicle was given the favored position by reason of state statute and city ordinance. See, Neb. Rev. Stat. §§ 39-608 and 39-640 (Reissue 1978), and Lincoln Municipal Ordinance §§ 10.32.030 and 10.32.031. That being the case, it cannot be said that the officer was liable as a matter of law for having failed to yield to Stephen, who was not entitled to the right-of-way under the circumstances of this case. The trial court would have committed reversible error if it had granted the motion for a directed verdict.

In *Stevens v. Kasik*, 201 Neb. 338, 343, 267 N.W.2d 533, 536 (1978), we said: "The party against whom a motion for a directed verdict is directed is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. It is only when the facts are conceded, undisputed, or are such that reasonable minds can draw but one conclusion therefrom that the trial court must decide the question as a matter of law and not submit it to a jury. Fangmeyer v. Reinwald, 200 Neb. 120, 263 N.W.2d 428 (1978); Garcia v. Howard, 200 Neb. 57, 262 N.W.2d 190 (1978)."

And in *Krug v. Laughlin*, 208 Neb. 367, 371, 303 N.W.2d 311, 313 (1981), we said: "A trial court should

direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Woodsmall v. Marijo, Inc.*, 206 Neb. 405, 293 N.W.2d 378 (1980); *Foremost Ins. Co. v. Allied Financial Services, Inc.*, 205 Neb. 153, 286 N.W.2d 740 (1980); *Stevens v. Kasik*, 201 Neb. 338, 267 N.W.2d 533 (1978); *Garcia v. Howard*, 200 Neb. 57, 262 N.W.2d 190 (1978); *McCready v. Al Eighmy Dodge*, 197 Neb. 684, 250 N.W.2d 640 (1977).

"To test the evidence for a jury question, the trial court must resolve every controverted fact in favor of the party against whom a verdict is sought and give that party the benefit of every inference which can reasonably be drawn from the evidence presented. *Novotny v. McClintick*, 206 Neb. 99, 291 N.W.2d 252 (1980); *Foremost Ins. Co. v. Allied Financial Services, Inc.*, supra; *Woodsmall v. Marijo, Inc.*, supra; *Simet v. Sage*, ante p. 13, 301 N.W.2d 600 (1981)."

We conclude, therefore, that the assignments of error raised by appellants must be overruled and the action of the trial court in all respects affirmed.

AFFIRMED.