ROBBIE DENISE GATEWOOD, APPELLEE, V. CITY OF BELLEVUE, A POLITICAL SUBDIVISION, APPELLANT.
441 N.W.2d 585

Filed June 16, 1989.   No. 87-719.

526

Thomas M. Locher and Jack A. Dike, of Hansen, Engles & Locher, P.C., for appellant.

James J. Frost and Raymond R. Aranza, of North & Black, P.C., for appellee.

HASTINGS, C.J., SHANAHAN, and FAHRNBRUCH, JJ., and NORTON, D.J., and RONIN, D.J., Retired.

NORTON, D.J.

The appeal in this matter arises out of a tort claims action involving the City of Bellevue, Nebraska. Following trial, the plaintiff, Robbie Denise Gatewood, was awarded a money judgment for personal injuries suffered and expenses incurred as the result of an automobile accident between an automobile driven by her and a police cruiser belonging to the City of Bellevue (City) and being driven by Officer James J. Rybar, a police officer employed by the City. We affirm.

The evidence in this case indicates that on May 12, 1984, at approximately 1:30 p.m., the plaintiff was driving an automobile belonging to her employer in a northerly direction along and upon U.S. Highway 73-75 (73-75) and was at that time approaching the intersection of that highway with Chandler Road in Sarpy County, Nebraska. At the intersection with Chandler, 73-75 has four northbound traffic lanes. Directly west of this intersection, Chandler intersects with Railroad Avenue, where there are two southbound traffic lanes. Approximately 110 feet west of that intersection, Chandler intersects with 13th Street, which has three lanes of traffic. All

together, within a space of roughly 300 feet, Chandler intersects with nine lanes of north or south traffic and two lanes of southbound traffic that merge into Chandler. All traffic at these intersections is regulated by traffic lights.

At about the same time, Rybar was operating the police cruiser in an area west and north of the intersection of Chandler and 73-75. He had just received a report of an intrusion at a location east of that intersection. In response, he turned on his signal lights, activated his siren, proceeded south to Chandler, and there turned to the east. According to his testimony, his speed as he traveled east along Chandler toward the 13th Street intersection was between 35 and 45 miles per hour and at times in excess of the speed limit. As he approached the 13th Street intersection, he noted that the traffic light controlling eastbound traffic was green, but as he entered that intersection the light changed to amber or yellow. He proceeded through that intersection and on into the intersection of Chandler and Railroad Avenue. The light for eastbound traffic was then red. He went from that intersection into the intersection of Chandler and 73-75. As he did so, he noted traffic in the three western northbound traffic lanes of 73-75. He did not observe any traffic in the fourth or easternmost lane. His testimony was that he made eye contact with the drivers of the vehicles stopped in the three west lanes, and traveling across those lanes, he continued into the fourth and easternmost lane against the red light.

In the meantime, the plaintiff had been proceeding along 73-75, and as she approached the intersection with Chandler she was traveling in the far east lane of traffic, with no other traffic between her and the intersection in her lane of traffic. Before she reached the intersection, the light controlling the flow of traffic in her lane turned green, and she proceeded into the intersection, where her car was struck by the police cruiser.

Excluding the plaintiff and Rybar, 11 other individuals testified during the course of this trial. A fair evaluation of their individual testimony would be that their observations regarding the speed of the police cruiser before and at the time it entered and traveled through the intersection of Chandler and 73-75 displayed a wide variation. There were also conflicts with

regard to the speed of the plaintiff and whether or not the siren on the police cruiser had been activated. The testimony of the plaintiff was that she did not see the police cruiser until it was virtually in contact with her car. Rybar offered testimony with regard to his speed and acknowledged that he never did see the plaintiff until the accident had occurred. He also testified that from the west side of the intersection of Chandler with Railroad Avenue his view was unimpeded for 1 to 1 1/2 blocks south along 73-75, that he did not see any cars on that highway other than the ones stopped in the three west northbound lanes, and that he could not recall if he had looked to the south as he entered the intersection with 73-75 other than to make eye contact with the drivers of the stopped vehicles.

The plaintiff, having complied with the provisions of the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 et seq. (Reissue 1987), thereafter filed her petition in the district court for Sarpy County, Nebraska, claiming that the sole and proximate cause of the accident and the resulting injuries and damages sustained by her was the negligence of Rybar. The defendant filed its answer, denying negligence and alleging that the plaintiff was contributorily negligent to a degree sufficient to bar her recovery as a matter of law. The specifications of contributory negligence included failing to keep a proper lookout, failing to have her vehicle under reasonable control, failing to yield the right-of-way to an emergency vehicle, and excessive speed. The defendant also filed a counterclaim for damages to the police cruiser, alleging that those damages were the sole and proximate result of the negligence of the plaintiff as previously noted.

The judgment, which was entered by the district court, found that the police cruiser was responding to an emergency call and was proceeding east on Chandler; that the plaintiff was operating her vehicle in a northerly direction on 73-75; that the cruiser entered the intersection of the streets on a red light, with siren and lights activated; that the plaintiff had a green light in her lane of traffic; that the west three northbound lanes of 73-75 contained vehicles which had stopped for a red light; and that Rybar, after having ascertained by making visual contact that the vehicles in the west three lanes would remain stopped,

proceeded through the fourth lane without making visual contact with the plaintiff. The court further found that the issue in regard to liability was governed by that part of Neb. Rev. Stat. § 39-640 (Reissue 1988) which provides as follows: "(2) This section shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway." On the basis of this statute and the evidence, the court then found that Rybar had failed to drive with due regard to the vehicle of the plaintiff, ordered judgment for the plaintiff, and dismissed the defendant's counterclaim. No specific findings were made with regard to the negligence of Rybar other than set forth above, nor were findings made with respect to the allegations of negligence and/or contributory negligence on the part of the plaintiff.

In its appeal, the City assigns 10 errors on the part of the trial court, which in view of our decision can be reduced into three for consideration, to wit: (1) The trial court erred in overruling appellant's motion to dismiss Gatewood's petition when the evidence established Gatewood was contributorily negligent in a degree sufficient to bar her recovery as a matter of law; (2) the trial court erred (a) in finding appellant's police officer failed to drive with due regard to appellee's vehicle; (b) in not finding appellant's police cruiser was entitled to the preferential right-of-way granted by Neb. Rev. Stat. §§ 39-608 and 39-640 (Reissue 1988); and (c) in not finding appellant's officer's negligence, if any, was less than gross as compared to that of Gatewood; and (3) the trial court erred in not finding (a) Gatewood had only a qualified right to proceed on a green light, subject to those vehicles already lawfully in the intersection, and her actions in proceeding into the intersection constituted contributory negligence; (b) Gatewood's contributory negligence was a proximate cause or a proximately contributing cause of the accident; and (c) Gatewood's contributory negligence was more than slight as compared to any negligence on the part of appellant's officer.

The findings of fact of the trial court in a proceeding under the Political Subdivisions Tort Claims Act, §§ 13-901 et seq., will not be set aside unless such findings are clearly incorrect.

*Phillips v. City of Omaha*, 227 Neb. 233, 417 N.W.2d 12 (1987); *Lee v. City of Omaha*, 209 Neb. 345, 307 N.W.2d 800 (1981). See, *Maple v. City of Omaha*, 222 Neb. 293, 384 N.W.2d 254 (1986); *Crawford v. Ham*, 209 Neb. 802, 311 N.W.2d 896 (1981). In a review of a bench trial under the Political Subdivisions Tort Claims Act, this court must consider the evidence in the light most favorable to the successful party, resolving any conflicts in the evidence in favor of that party and giving to that party the benefit of all reasonable inferences that can be deduced from the evidence. *Phillips v. City of Omaha, supra.* See, *Lee v. City of Omaha, supra*; *Crawford v. Ham, supra.* Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of, as a proximate cause. *Maple v. City of Omaha, supra*; *Steinauer v. Sarpy County*, 217 Neb. 830, 353 N.W.2d 715 (1984); *Stephen v. City of Lincoln*, 209 Neb. 792, 311 N.W.2d 889 (1981). Where evidence is in conflict and such that reasonable minds may draw different conclusions therefrom, the questions of negligence and comparative and contributory negligence are factual determinations. *Maple v. City of Omaha, supra.* The question of comparative negligence is for the determination of the fact finder. *Maple v. City of Omaha, supra.* The statute granting emergency privileges to police vehicles clearly imposes a duty of due regard or due care upon the drivers of emergency vehicles, and in a negligence action their conduct will be measured against that of a reasonable person exercising due care under the same emergency circumstances. *Maple v. City of Omaha, supra.* See, also, *Lee v. City of Omaha, supra.* A driver is guilty of negligence as a matter of law if he fails to see one who is favored over him under the rules of the road. *Steinauer v. Sarpy County, supra.*

From our analysis of the evidence and the record, we determine the trial court could find that Rybar, while operating a vehicle belonging to the City and responding to an emergency call, entered Chandler at a point west of the intersection of Chandler and 73-75 and then proceeded east toward that

intersection, and that as he entered the intersection of Chandler with 13th Street the traffic light changed from green to amber. He proceeded through that intersection with lights and siren activated, and toward the intersection of Chandler and Railroad Avenue, entering that intersection against a red light. Railroad Avenue is separated from 73-75 by a median approximately 16 feet wide tapering to a point at the south edge of Chandler. At this point, by his own admission, Rybar had vision south for a block to a block and one-half. At that time he noted only vehicles in the three westerly lanes of northbound traffic on 73-75, which had stopped for a red light that had changed to green. He made visual contact with the drivers of the vehicles in those lanes and proceeded into the intersection against the red light. He traveled across three lanes, an approximate distance of 60 feet, and entered the fourth lane, where his cruiser collided with the automobile being operated by the plaintiff.

As previously noted, the evidence is in sharp conflict as to Rybar's rate of speed at this time. By his own admission, he traveled at a rate at times in excess of the speed limit while traversing Chandler prior to the 13th Street intersection. Likewise, we know from his own testimony that he entered plaintiff's lane of traffic at a rate of speed of at least 20 to 25 miles per hour. Other evidence placed his speed at that point at 45 to 50 miles per hour. Under the facts detailed above, considering the complexity of the intersection involved, and considering the evidence most favorably for the plaintiff, we cannot say that the finding of the trial court that Rybar failed to drive with due regard to the vehicle of the plaintiff is clearly incorrect. As Rybar had ascertained that vehicles were located in three of the four lanes of 73-75, it could be said that he was not exercising reasonable due care in the operation of the cruiser when he entered the fourth lane at a rate of speed that might not permit him to avoid a collision with an automobile traveling in that lane, and that he should first have made a visual survey of that lane to the south of the intersection before entering. His failure to do so could have led the trial court to conclude that Rybar was negligent in at least one of the specifications of negligence charged against him.

Section 39-608, as adopted in 1973, grants to the driver of an emergency vehicle the right to proceed past a steady red light, but he must exercise the due care also mentioned in § 39-640. In this case, Rybar had a favored position. The failure of the plaintiff to see him is negligence on her part as a matter of law, and there can be no question that this failure contributed to some degree to the collision. Since the question of comparative negligence is for the fact finder, it is implicit in the judgment rendered by the trial court that the fact finder considered and rejected the defendant's claim of contributory negligence on the part of the plaintiff sufficient to bar her recovery. In reviewing this finding by the trial court, we must resolve in her favor all the conflicts in the evidence and grant to her all reasonable inferences that can be deduced therefrom. Doing so, we are not prepared to say that in this case her negligence was more than slight when compared with the negligence of Rybar, nor that his negligence was less than gross when compared with the negligence of the plaintiff. We note that the record presented to us in this appeal is partially silent with regard to evidence bearing on damages, and we must therefore conclude that the trial court took into consideration the negligence of the plaintiff in fixing the damages awarded.

Having disposed of the question of contributory negligence on the part of the plaintiff, we determine it follows that a dismissal of the defendant's counterclaim was proper. If the negligence of the plaintiff will not support a finding for the defendant under her petition, it certainly will not sustain judgment for the defendant on its counterclaim.

There being no merit to the assignments of error, the judgment of the district court is affirmed.

AFFIRMED.