CITY OF LAVISTA, NEBRASKA, APPELLANT, V. DONALD G.
ANDERSEN AND GREG ARMSTRONG, INC., APPELLEES.
480 N.W.2d 185

Filed February 21, 1992.    No. S-89-708.

Fred H. Brown and John P. Steichen, of Nye, Fellman, Moylan & Brown, for appellant.

Robert C. Doyle and Daniel D. Walsh, of Walsh, Fullenkamp & Doyle, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This case arises out of a collision at the intersection of 84th Street and Highway 370 in Sarpy County, Nebraska, between an ambulance owned by the plaintiff-appellant, City of LaVista, Nebraska, and a truck owned by defendant-appellee Greg Armstrong, Inc. (Armstrong). The ambulance was driven by Robert Amweg, and the truck was driven by defendant-appellee Donald G. Andersen. The parties pled that both drivers were at all times acting within the scope and in the course of their employment with the City of LaVista and Armstrong, respectively.

The City of LaVista brought suit, alleging negligence on the part of Andersen and seeking $11,682.81 for damages to the ambulance. The defendants answered, denying any negligence and in the alternative alleging contributory negligence more than slight on the part of Amweg. Armstrong also filed a counterclaim under the Nebraska Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 et seq. (Reissue 1987), alleging negligence on the part of Amweg and seeking $12,500 for damages to the truck and lost profits.

The case was tried without a jury in the Sarpy County District Court. The trial court found that Amweg violated his duty of care by failing to maintain a proper lookout and failing to observe the traffic signal as he approached the intersection. The court offered no finding as to Andersen's violation of any duty of care. The court entered judgment against the City of LaVista on its petition and in favor of Armstrong on its counterclaim, awarding the company $9,113.57 for damage to the truck and $1,250 for lost profits due to loss of use of the

truck, for a total award of $10,363.57 plus costs.

## FACTUAL BACKGROUND

On April 29, 1987, at approximately 11:30 a.m., Amweg, a member of the LaVista Volunteer Fire Department, received an emergency call to assist a juvenile having trouble breathing. The call was described as a "Code 3," which indicates a situation involving a person with a life-threatening problem. In response, Amweg drove a city ambulance to pick up the victim. In accordance with department procedures, Amweg activated the ambulance's emergency lights and siren.

After picking up the juvenile at LaVista Junior High School, Amweg proceeded to Midlands Hospital. He drove south on 84th Street with his lights and siren still activated. At the point where 84th Street intersects with Highway 370 there are three lanes for southbound traffic: a left-turn lane, a through lane, and a right-turn lane. As Amweg approached this intersection, there were cars in the left-turn and through lanes obstructing his path. However, a white van located in the right-turn lane pulled over to the shoulder to allow the ambulance by, and Amweg drove the ambulance into that lane.

A traffic signal governs traffic in all directions at the intersection of 84th Street and Highway 370. As Amweg approached the intersection, the light governing southbound traffic turned red. Amweg testified, however, that he was unaware of the light's color when he crossed the intersection. Amweg slowed the ambulance to approximately 5 m.p.h. as he drove between the stopped cars and the white van, then paused to observe the traffic east and west before proceeding across the intersection. Amweg testified that there were cars at all four sides of the intersection and that they had all stopped as he approached. Two other witnesses also testified that traffic east and west on Highway 370 stopped as the ambulance approached, though one witness did state that another car went through the green light ahead of Andersen's truck. After he checked the intersection, Amweg accelerated the ambulance through the intersection and was struck by the truck just as the ambulance was leaving the intersection. He testified that he did not see or hear the truck approaching prior to impact.

Andersen was traveling eastbound on Highway 370 when the accident occurred. He was driving a fully loaded 1984 Mack dump truck with a "pup trailer." The entire rig weighed approximately 95,000 pounds. There is evidence in the record that the speed limit on Highway 370 at 84th Street is 55 m.p.h. Andersen testified that he slowed for a red light as he approached the 84th Street intersection, but that the light turned green when he was approximately 200 to 250 feet from the crossing. He testified that he then accelerated to 35 to 40 m.p.h., though there is evidence in the record suggesting he was going as fast as 50 m.p.h.

Because it was a hot, sunny day, Andersen had the truck's windows rolled up and air conditioner on. At the time, he was listening to three separate radios: an AM/FM radio, a CB radio, and a company radio. Andersen also testified that when he accelerated the truck, the exhaust pipes near the cab of the truck made "a lot of noise." Andersen testified that he looked north on 84th Street just as the light turned green, but thereafter did not look again because he was concentrating on a car in the left-turn lane of westbound Highway 370. Andersen testified that he did not see the ambulance coming until the collision. Other witnesses at the intersection testified that they either saw the ambulance's flashing lights or heard its siren as it approached.

Also significant is the testimony of Clair Morgan. At the time of the accident he was stopped for the red light governing the through lane going south on 84th Street. He testified that the ambulance pulled alongside his car before proceeding through the intersection. Morgan testified that he could see a quarter of a mile west on Highway 370 and that he saw the truck approaching "a couple hundred feet" from the intersection as the ambulance pulled alongside him. Morgan further testified that

> the ambulance slowed down . . . then he pulled up and almost stopped, then stomped on the foot feed and just shot out there just right in front of that other truck that was coming with the exhaust . . . . I mean, I knew he was going to get hit. . . . I thought, he's almost stopped. He's going to gain two seconds, and stomp on the foot feed to

go in front of that big truck? I couldn't believe it.

Another witness also testified that from the south side of the intersection of 84th Street and Highway 370, she saw the truck approaching and was surprised that the ambulance tried to cross in front of it.

The record reveals that the stretch of Highway 370 as it approaches 84th Street from the west is relatively level. There is photographic evidence suggesting that a tree located at the northwest corner of 84th Street and Highway 370 may have obstructed Amweg's view of the truck or Andersen's view of the ambulance, and Andersen specifically testified that the tree did in fact obstruct his view of the intersection.

## ASSIGNMENTS OF ERROR

On appeal, the City of LaVista argues that the trial court erred in (1) finding that Amweg violated a duty of due care in his operation of the ambulance and (2) failing to find that Andersen was negligent in the operation of the truck and that such negligence contributed in a degree more than slight to the occurrence of the accident.

## THE CITY'S CLAIM

The trial judge in this case found that Amweg violated his duty of care by failing to observe the traffic signal and by failing to keep a proper lookout for east-west traffic. In finding against the City of LaVista on its claim, the judge made no finding as to the propriety of Andersen's conduct. However, as is more fully discussed below, Andersen acted negligently as a matter of law in failing to see or hear the ambulance. Therefore, we review the trial court's determination that Amweg's negligence was more than slight when compared to that of Andersen and that Andersen's negligence was less than gross when compared to that of Amweg. See *Gatewood v. City of Bellevue*, 232 Neb. 525, 441 N.W.2d 585 (1989). The first issue for this court, then, is whether the trial court erred in finding that Amweg was negligent to a degree sufficient to bar the city's claim.

Contributory negligence is conduct on the part of the plaintiff amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury and

which, concurring and cooperating with actionable negligence on the part of the defendant, contributes to the injury complained of as a proximate cause. *Maple v. City of Omaha*, 222 Neb. 293, 384 N.W.2d 254 (1986). In Nebraska, emergency vehicles operating audible sirens and visible warning lights are privileged to exceed posted speed limits and enter intersections against red lights if done safely. Neb. Rev. Stat. §§ 39-602(5) (Cum. Supp. 1986) and 39-608 (Reissue 1988). However, the driver of such an emergency vehicle is under a duty to drive with due regard for the safety of others. § 39-608(5). In an action involving allegations that the driver of an emergency vehicle acted negligently, the driver's actions are measured against those of a reasonable person exercising due care under the same emergency circumstances. *Gatewood, supra*; *Maple, supra*; *Lee v. City of Omaha*, 209 Neb. 345, 307 N.W.2d 800 (1981).

When the evidence conflicts such that reasonable minds may draw different conclusions therefrom, the questions of negligence and comparative and contributory negligence are factual determinations. *Maple, supra*, citing *Stephen v. City of Lincoln*, 209 Neb. 792, 311 N.W.2d 889 (1981). On appeal of a law action tried without a jury, the trial court's factual findings have the effect of a jury verdict and will not be set aside unless clearly wrong. *Metropolitan Utilities Dist. v. Pelton*, 236 Neb. 66, 459 N.W.2d 193 (1990). Moreover, in reviewing such cases this court considers the evidence in the light most favorable to the successful party, resolving all conflicts in that party's favor and giving that party the benefit of every inference reasonably deducible from the evidence. *Id.*; *Wells Fargo Alarm Serv. v. Nox-Crete Chem.*, 229 Neb. 43, 424 N.W.2d 885 (1988). Therefore, in reviewing this case the court must consider the evidence in the light most favorable to the appellees, Armstrong and Andersen.

This case is very similar to *Gatewood, supra*. There, an accident occurred between the plaintiff's automobile and a cruiser driven by a member of the Bellevue Police Department. The police officer entered an intersection against a red light with his lights and siren activated after first making eye contact with the drivers of vehicles in the nearest three of four lanes of cross-traffic. He collided with a vehicle driven by the plaintiff in

the fourth lane. The officer was traveling at 20 to 50 m.p.h. as he crossed the intersection, and his view of the intersection was unobstructed for approximately one block in the direction from which the plaintiff's car came.

The trial court found in favor of the plaintiff, and the City of Bellevue appealed. This court held the evidence sufficient to support a finding that the officer acted negligently. The court explained that a fact finder could conclude that the officer breached his duty of care by entering the fourth lane of traffic at a speed that might not allow him to avoid a collision, especially given his failure to first make a visual survey of that lane before entering.

Here, Morgan testified that from his position alongside and somewhat behind Amweg's ambulance he could see west on Highway 370 for a quarter mile and that he saw Andersen's truck approaching from "a couple hundred feet" away. This testimony is important because it tends to negate the inference that either the tree or the white van interfered with Amweg's ability to see the approaching truck. There is also evidence that Amweg accelerated very rapidly after pausing to check the east-west traffic. Both Morgan and another witness expressed their surprise at Amweg's attempt to beat the truck across the intersection. As in *Gatewood*, there is evidence from which a trier of fact could conclude that Amweg acted negligently in failing to adequately survey the intersection before attempting to cross at a high rate of speed. We do not think the trial court erred in finding that Amweg failed to maintain a proper lookout.

The trial court also found Amweg negligent in failing to observe the traffic signal before crossing the intersection. Though Amweg had the right-of-way despite the red light, the duty of care imposed by § 39-608(5) implies that drivers of emergency vehicles cannot simply careen through intersections oblivious to conditions around them. A court could conclude that Amweg might have checked the cross-traffic more carefully had he known his light was red. Because the appellees are entitled to the resolution of conflicting inferences in their favor, we cannot say the trial court clearly erred in finding that Amweg was negligent in this regard. We therefore conclude that

there is sufficient evidence in the record to sustain a finding that Amweg's negligence contributed in a degree more than slight to causing the accident. Appellant's first assignment of error is without merit.

## ARMSTRONG'S COUNTERCLAIM

The standard of review for findings of fact by the trial court in a proceeding under the Political Subdivisions Tort Claims Act has been previously set forth. That is, such findings will not be set aside unless clearly incorrect, and the evidence is considered in the light most favorable to the successful party, with the court resolving all conflicts in the evidence in favor of the successful party and giving that party the benefit of every reasonable inference deducible from the evidence. *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990); *Gatewood v. City of Bellevue*, 232 Neb. 525, 441 N.W.2d 585 (1989). Therefore, in analyzing the city's second assignment of error we will again review the evidence in the light most favorable to Armstrong and Andersen.

The parties in this case pled that the ambulance was owned by the City of LaVista and stipulated that the ambulance driver was responding to a legitimate "Code 3" emergency call at the time the accident occurred. It is also clear from the evidence that the ambulance's emergency lights and siren were activated at the time of the accident. As mentioned earlier, under these circumstances an ambulance is privileged to safely exceed posted speed limits and proceed past red lights and stop signs. See §§ 39-602(5) and 39-608(3). Upon the immediate approach of an emergency vehicle with its lights or siren activated, drivers are under a duty to yield the right-of-way until the vehicle passes. Neb. Rev. Stat. § 39-640(1)(a) (Reissue 1988).

Andersen testified that he did not see the ambulance until the collision. It is settled in this state that failing to see one favored under the rules of the road constitutes negligence as a matter of law. *Gatewood, supra*; *Maple v. City of Omaha*, 222 Neb. 293, 384 N.W.2d 254 (1986); *Mitchell v. Kesting*, 221 Neb. 506, 378 N.W.2d 188 (1985); *Steinauer v. Sarpy County*, 217 Neb. 830, 353 N.W.2d 715 (1984); *Stephen v. City of Lincoln*, 209 Neb. 792, 311 N.W.2d 889 (1981), citing *Bonnes v. Olson*, 197 Neb.

309, 248 N.W.2d 756 (1976). Therefore, Andersen was negligent as a matter of law in failing to see or hear the ambulance prior to his entering the intersection.

As discussed above, by entering judgment against the City of LaVista on its claim, the trial court necessarily found Amweg contributorily negligent in a degree more than slight. Similarly, by entering a judgment in favor of Armstrong on its counterclaim despite Andersen's negligence, the trial court necessarily found that such negligence was slight when compared with that of Amweg, whose negligence was gross. See, *Gatewood, supra*; Neb. Rev. Stat. § 25-21,185 (Reissue 1989).

Again, the decision in *Gatewood* is helpful in analyzing appellant's second assignment of error. The evidence regarding the plaintiff's conduct in that case revealed that the light governing her lane of traffic turned green prior to her arrival at the intersection and that she proceeded through without slowing down, having not seen or heard the police vehicle until seconds before the collision. There was also evidence that traffic in the lanes adjoining hers had stopped for the cruiser despite the green light. The trial court found in favor of the plaintiff in her claim against the city, concluding that the woman's negligence did not contribute in a degree more than slight to causing the accident. This court affirmed, holding that the trial court's findings were not clearly erroneous.

There is little to distinguish Andersen's conduct in this case from that of the plaintiff in *Gatewood*. Both approached an intersection as the traffic signal governing their lane turned green, and both proceeded through the intersection without slowing down. Neither saw the approaching emergency vehicle, though its lights and siren were activated. Here, the city relies on evidence that other east-west vehicles were stopped at the intersection, a fact which should have put Andersen on notice of potential danger. However, there is evidence in the record that at least one vehicle proceeded through the green light ahead of Andersen.

As for Andersen's failure to see or hear the ambulance's emergency lights and siren, there is evidence that Andersen looked north on 84th Street upon approaching the intersection, but thereafter concentrated on a vehicle he feared might

attempt to turn left in front of him. A fact finder could reasonably conclude that Andersen did not breach his duty of care in diverting his attention from the north side of the intersection under these circumstances. Finally, of the three witnesses who testified to hearing the siren, one testified that she heard it when the ambulance was only three to four car lengths away, and Morgan testified that he heard the siren just as the traffic signal turned from yellow to red, which was just prior to his observing the truck approaching from "a couple hundred feet" away. From this evidence, the trial court might have concluded that by the time Andersen heard the siren, he could not have stopped in time.

Bearing in mind that it is not the province of this court to resolve evidentiary conflicts or to reweigh the evidence, *Central States Health & Life v. Miracle Hills Ltd.*, 235 Neb. 592, 456 N.W.2d 474 (1990), we cannot say that the trial court clearly erred in finding that Andersen's negligence did not contribute in a degree more than slight to causing the accident.

However, under the statute governing this case, when the plaintiff in a personal injury suit engages in negligence contributing to the injuries sustained, but not to a degree sufficient to bar the suit, the plaintiff's contributory negligence "*shall* be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff . . . ." (Emphasis supplied.) § 25-21,185. Cf. Neb. Rev. Stat. §§ 25-21,185.01 to 25-21,185.06 (Supp. 1991) (revising law regarding contributory negligence for actions accruing on or after January 1, 1992).

Here, the trial court awarded Armstrong the stipulated amount for damage to the truck, $9,113.57, plus $1,250 for loss of use of the truck. In so doing, the court awarded Armstrong the full amount of damages it proved resulted from the accident. Thus, it is clear the trial court did not reduce Armstrong's award in an amount proportional to the degree to which Andersen's negligence contributed to causing the accident. Because § 25-21,185 requires such mitigation, we reverse and remand for a comparison of the respective percentages of fault and a reduction of Armstrong's award accordingly.

REVERSED AND REMANDED WITH DIRECTIONS.