BRENT CERNY, APPELLANT, V.
CEDAR BLUFFS JUNIOR/SENIOR PUBLIC SCHOOL,
SAUNDERS COUNTY DISTRICT NO. 107, APPELLEE.
679 N.W.2d 198

Filed May 7, 2004. No. S-03-085.

Larry C. Johnson, of Johnson & Welch, P.C., for appellant.

Stephen S. Gealy and Timothy E. Clarke, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

HENDRY, C.J., AND WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

This is the second appearance of this case before this court. Brent Cerny, appellant, filed a personal injury action against Cedar Bluffs Junior and Senior High School (the School), appellee, under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 to 13-926 (Reissue 1991 & Cum. Supp. 1994). In his lawsuit, Cerny alleged that while participating in athletics as a student at the School, he sustained personal injuries as a result of the negligence of the School and its coaching staff. Following the initial bench trial, the district court for Saunders County found that the School's coaches were not negligent and dismissed the petition. Cerny appealed.

On appeal, we concluded that the district court had erred in determining the applicable standard of care and in discounting certain expert witness testimony when applying that standard of care. We reversed the district court's decision and remanded the cause for a new trial. *Cerny v. Cedar Bluffs Jr./Sr. Pub. Sch.*, 262 Neb. 66, 628 N.W.2d 697 (2001) (*Cerny I*).

Following remand, a second bench trial was held. After the second trial, the district court found that certain conduct was required to meet the standard of care and that the conduct of the School's football coaching staff comported with the standard of care required of a reasonably prudent person holding a Nebraska teaching certificate with a coaching endorsement. As a result, in its journal entry filed January 6, 2003, the district court found no negligence on the part of the School and dismissed the petition. Cerny appeals. We affirm the district court's decision on remand.

## II. STATEMENT OF FACTS

Initially, we note that pursuant to the parties' stipulation, much of the trial record from the first trial of this case was received into

evidence during the second trial. The following facts are established by that portion of the record which is before us now and which was before us in *Cerny I*, 262 Neb. at 67-69, 628 N.W.2d at 700-01, and are therefore reiterated from that opinion:

In the fall of 1995, Cerny was a student at the School and a member of its football team. On the evening of Friday, September 15, 1995, he participated in a football game between Cedar Bluffs and Beemer high schools. Mitchell R. Egger was the head coach of the Cedar Bluffs team, and Robert M. Bowman was the assistant coach. Both held Nebraska teaching certificates with coaching endorsements.

Cerny fell while attempting to make a tackle during the second quarter of the Beemer game, striking his head on the ground. Although he felt dizzy and disoriented after the fall, Cerny initially remained in the game but took himself out after a few plays. He returned to the game during the third quarter. Subsequently, during football practice on Tuesday, September 19, Cerny was allegedly injured again when his helmet struck that of another player during a contact tackling drill.

There was conflicting evidence at trial regarding the symptoms experienced and communicated by Cerny during and after the Beemer game. Cerny testified that when he came out of the game, he told Egger and Bowman that he felt dizzy, disoriented, and extremely weak. Egger stated that Cerny complained of dizziness when he came off the field during the Beemer game. He also noted that Cerny was short of breath and had a tingling sensation in his neck. Egger stated that Bowman continued to monitor Cerny.

Bowman testified that Cerny did not complain of a headache when he left the game, but did state that he felt fuzzy or dizzy, that he had some burning in his shoulder, and that he could not catch his breath. Bowman attributed Cerny's dizziness to hyperventilation, not a head injury. Bowman stated that when Cerny came out of the game, Cerny made normal eye contact with Bowman and Cerny's speech and movement appeared normal. After catching his breath, Cerny appeared to Bowman to be in a normal emotional state. However, Bowman did recommend to Egger

that Cerny should get medical attention, but to his knowledge, no medical personnel examined Cerny that evening.

When Cerny asked to re-enter the game during the third quarter, Bowman observed that he seemed completely normal, exhibiting neither confusion, disorientation, nor abnormal speech. Bowman also noted that Cerny did not complain of a headache. Egger allowed Cerny to re-enter the game after observing that his color looked good, his eyes looked clear, and his speech was normal.

Cerny testified that he had a headache continuously from Friday night until the practice on Tuesday. However, there is conflicting evidence as to whether he reported this to his coaches. Cerny testified he told Bowman he had a headache during the bus ride home after the Beemer game. However, Bowman testified that during the bus ride, he asked Cerny how he felt, and Cerny replied "I feel good, Coach" and did not complain of a headache. . . . Cerny testified that he told his coaches before the Tuesday practice that he had a nagging headache all weekend, but on cross-examination, he admitted that he did not remember if he had told the coaches that he was feeling bad before practice. Egger testified that he did not talk to Cerny before the Tuesday practice and permitted him to participate because "I thought he was okay, just—he was okay Friday. At least in our eyes he was okay."

Dr. Thomas A. McKnight, a family practice physician who has treated Cerny since September 1995, and Dr. Richard Andrews, a neurologist to whom Cerny was referred by McKnight, both expressed opinions that Cerny suffered a concussion during the Friday night game; that he was still symptomatic at the practice on the following Tuesday; and that during the practice, he suffered a closed-head injury with second concussion syndrome. Andrews testified that the second blow to the head sustained during the practice was "the principal cause of [Cerny's] traumatic brain injury, and the sequelae as [they exist] now."

Cerny filed a personal injury action against the School under the Political Subdivisions Tort Claims Act, and in his amended petition (petition) alleged that the School, acting through its

coaches, was negligent in a number of particulars, including "failing to adequately examine [Cerny] following his initial concussion . . . to determine the need for immediate qualified medical attention" and "allowing [Cerny] to return to play . . . without authorization from qualified medical personnel and without verifying it was safe to do so." The case was tried to the bench from June 28 to 30, 1999. On October 6, the district court entered judgment in favor of the School and dismissed Cerny's petition.

Cerny appealed the district court's decision. In *Cerny I*, we noted that determining the standard of care to be applied in a particular case is a question of law, and we concluded as a matter of law that in the instant case, "[t]he applicable standard of care by which the conduct of the School's coaching staff should be judged is that of a reasonably prudent person holding a Nebraska teaching certificate with a coaching endorsement." 262 Neb. at 77, 628 N.W.2d at 706. We further concluded that the district court erred in determining the applicable standard of care and in discounting certain expert witnesses' testimony when determining whether the coaches met the standard of care. Because the district court's errors were prejudicial to Cerny, we reversed the district court's decision and remanded the cause for a new trial. On remand, we instructed the district court that "in order to determine the existence of negligence, [it should] determine, as the finder of fact, what conduct was required by [the standard of care] under the circumstances of this case and whether Egger and Bowman acted in conformity therewith." *Id.*

Cerny's case came on for a second bench trial on April 11 and 12, 2002. As stated above, pursuant to the parties' stipulation, much of the record from the first trial was offered and received into evidence by the district court during the second trial. Certain documentary evidence was received into evidence at the second trial. Certain witnesses testified live. Cerny called several expert witnesses, including Christina Froiland, a certified athletic trainer and assistant professor of physical education, and Michael McCuistion, a certified athletic trainer. The School called John Stineman as its sole expert witness. Stineman, a Nebraska endorsed high school football coach, had recently retired after 30 years of coaching.

At the close of the trial, the district court took the matter under advisement. The district court filed its journal entry on January 6, 2003, in which it made findings and conclusions. In its journal entry, the district court summarized the expert witnesses' testimony. That summary, which is supported by the record, is repeated as follows:

Christina Froiland . . . teaches a class entitled "Prevention and Care of Athletic Injuries." This class is required by the State of Nebraska for teachers seeking a coaching endorsement. Froiland testified the typical symptoms of a concussion include dizziness, headache, and disorientation, and are generally known in the coaching profession. She further testified that when an athlete exhibits such symptoms following an injury, the coach should not permit the athlete to return to competition until receiving clearance from a physician.

. . . Michael McCuistion . . . testified regarding the recognition of symptoms of head injuries. . . . He testified that coaches must be aware of [the symptoms] and, when an athlete exhibits such symptoms, must take the athlete out of competition until a medical evaluation has been performed.

. . . .

. . . John Stineman . . . testified that he has 30 years [sic] experience as a coach of Nebraska high school football and that he has coached in many games, met and discussed football issues with other coaches and is aware of the practices and procedures utilized by coaches in the state with regard to player injury. . . . He stated that since the time of [Cerny's injury in 1995] and another head injury which occurred in a Nebraska high school football game at about the same time, high school football coaches have been more cognizant of the issues involving head injuries. He testified that there was little training or literature made available to Nebraska coaches on the issues of head injury prior to 1995, but since that time training and literature has [sic] been made more widely available to Nebraska's high school coaches. . . . He testified that in his opinion, the evaluation[s] made by coaches Egger and Bowman of [Cerny] on September 15, 199[5], were reasonable actions

which would have been taken by a Nebraska endorsed coach .... He testified that a reasonable coach would have permitted [Cerny] to reenter the game.

Elsewhere in its journal entry, the district court set forth its findings regarding the conduct required of a reasonably prudent person holding a Nebraska teaching certificate with a coaching endorsement under the circumstances of this case. The district court found that based upon the evidence in the record, which included the testimony of Froiland, McCuistion, and Stineman, the conduct required of a person holding a Nebraska teaching certificate with a coaching endorsement in 1995, when a player has sustained a possible head injury, is as follows: (1) The coach must be familiar with the features of a concussion, (2) the coach must evaluate the player who appears to have suffered a head injury for the symptoms of a concussion, (3) the evaluation must be repeated at intervals before the player can be permitted to reenter a game, and (4) the coach must make a determination based upon the evaluation as to the seriousness of the injury and determine whether it is appropriate to let the player reenter the game or to remove the player from all contact pending a medical examination.

In its journal entry, the district court next considered whether the School's coaches had acted in conformity with the conduct required under the foregoing standard of care. In this regard, the district court found that the record demonstrated the following:

Coach Bowman was familiar with the signs of a concussion. . . . Coach Bowman evaluated [Cerny] with respect to the signs of a concussion at intervals throughout the evening [and such evaluation] occurred while [Cerny] was resting and while he was up and about and while he was active in the game and after the game was over. The evaluation conducted by Coach Bowman revealed that the fuzziness complained of by [Cerny] had resolved within 15 minutes of his removing himself from the game. The record reveals that [Cerny] did not complain of any of the symptoms of a concussion.

Based upon these and other findings of fact, the district court determined that the coaches' decision allowing Cerny to reenter the game did not violate the applicable standard of care. The court stated that "the conduct of the coaches in this matter comported

with the standard of care required of reasonable [sic] prudent persons holding a Nebraska teaching certificate with a coach's endorsement. The court finds no negligence on the part of [the School]." The district court ordered the petition dismissed. Following dismissal of his petition, Cerny appealed.

## III. ARGUMENTS ON APPEAL

Cerny makes various arguments on appeal. These arguments can be restated as follows: The district court erred (1) in its consideration of Stineman's testimony regarding the conduct required by the School's coaches to meet the standard of care, (2) in its finding of fact as to what conduct was required to meet the applicable standard of care, (3) in its finding of fact that the coaches' decision to permit Cerny to reenter the game did not violate the applicable standard of care, and (4) in its resolution of the question of fact that the School was not negligent.

## IV. STANDARDS OF REVIEW

In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of a trial court will not be disturbed on appeal unless they are clearly wrong. *Estate of McElwee v. Omaha Transit Auth.*, 266 Neb. 317, 664 N.W.2d 461 (2003). In actions brought pursuant to the Political Subdivisions Tort Claims Act, when determining the sufficiency of the evidence to sustain the trial court's judgment, it must be considered in the light most favorable to the successful party; every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence. *Skinner v. Ogallala Pub. Sch. Dist. No. 1*, 262 Neb. 387, 631 N.W.2d 510 (2001).

## V. ANALYSIS

Cerny makes four arguments on appeal. We treat the first argument individually. Because the remaining three arguments challenge the district court's findings and resolutions of questions of fact, we treat the remaining arguments together below.

### 1. DISTRICT COURT'S CONSIDERATION OF STINEMAN'S TESTIMONY

Cerny first asserts that the district court erred in considering Stineman's testimony regarding the conduct required by the

School's coaches under the standard of care. Although Cerny concedes that Stineman is qualified as an expert witness, Cerny nonetheless objects to the weight accorded Stineman's testimony by the district court and claims that the district court erred in considering Stineman's testimony to the effect that the School's coaches' conduct was within the applicable standard of care. We reject this argument.

We have recognized that determining the weight that should be given expert testimony is uniquely the province of the fact finder. *Hawkins v. City of Omaha*, 261 Neb. 943, 627 N.W.2d 118 (2001); *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 813, 572 N.W.2d 362 (1998). We have further stated that in reviewing a judgment awarded in a bench trial under the Political Subdivisions Tort Claims Act, it is not the purview of an appellate court to reweigh the evidence. See *City of LaVista v. Andersen*, 240 Neb. 3, 480 N.W.2d 185 (1992).

As the finder of fact, the district court had the authority to determine what weight, if any, it would give to Stineman's testimony. See *Hawkins v. City of Omaha, supra*. It is apparent from the district court's journal entry that it evaluated all of the expert witnesses' testimony, as it was directed to do on remand. See *Cerny I*. It is also apparent from the district court's journal entry that the district court accorded weight to certain of Stineman's testimony, as it was permitted to do. Contrary to Cerny's argument, Stineman's testimony was not limited to anecdotal subject matter. To the contrary, Stineman's testimony was helpful to the finder of fact because aspects of his testimony related to the year 1995 in particular. It is not the function of this court to second guess the district court's decision with regard to the weight given to an expert's testimony or to reweigh that evidence in this appeal. See, *Hawkins v. City of Omaha, supra*; *City of LaVista v. Andersen, supra*. Accordingly, we conclude that Cerny's first argument is without merit.

## 2. DISTRICT COURT'S FINDINGS OF FACT

For his remaining three arguments, Cerny asserts that the district court erred (1) in its finding of fact as to what conduct was required to meet the applicable standard of care, (2) in its finding of fact that the coaches' decision to permit Cerny to reenter the

game did not violate the applicable standard of care, and (3) in its resolution of the question of fact that the School was not negligent. Cerny is asserting on appeal that the evidence shows that Cerny's coaches, Mitchell Egger and Robert Bowman, acted negligently in failing to keep Cerny out of competition until after he had received clearance from a physician to play. Cerny thus claims that the district court erred in finding under the facts of this case that the conduct of Egger and Bowman, in allowing Cerny to return to play in the Beemer game, satisfied the standard of care. Because the record contains evidence supporting the district court's various findings of fact, we determine there is no merit to Cerny's arguments.

As noted above, in *Cerny I,* we set forth the standard of care to be applied in this case. We stated that determining the standard of care to be applied in a particular case is a question of law, and we concluded that in the instant case, "[t]he applicable standard of care by which the conduct of the School's coaching staff should be judged is that of a reasonably prudent person holding a Nebraska teaching certificate with a coaching endorsement." *Id.* at 77, 628 N.W.2d at 706. Under the law-of-the-case doctrine, the applicable standard of care that the School's coaches were required to meet in this case has been conclusively established. See *Houston v. Metrovision, Inc., ante* p. 730, 677 N.W.2d 139 (2004).

On remand, we directed the district court to determine what conduct was required by the standard of care under the circumstances of this case, and to determine whether the conduct of Egger and Bowman in this case comported therewith. These determinations are findings of fact. See *Cerny I,* 262 Neb. at 75, 628 N.W.2d at 705 (stating "a finder of fact must determine what conduct the standard of care would require under the particular circumstances presented by the evidence and whether the conduct of the alleged tort-feasor conformed with the standard").

In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of a trial court will not be disturbed on appeal unless they are clearly wrong, *Estate of McElwee v. Omaha Transit Auth.,* 266 Neb. 317, 664 N.W.2d 461 (2003), and it is not the purview of the appellate court to reweigh the evidence. *City of LaVista v. Andersen,* 240 Neb. 3, 480 N.W.2d 185

(1992). In actions brought pursuant to the Political Subdivisions Tort Claims Act, when determining the sufficiency of the evidence to sustain the trial court's judgment, it must be considered in the light most favorable to the successful party; every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence. *Skinner v. Ogallala Pub. Sch. Dist. No. 1*, 262 Neb. 387, 631 N.W.2d 510 (2001).

### (a) Conduct Required to Meet Standard of Care

As noted above, on remand, after reviewing the evidence, the district court found that the conduct required of a reasonably prudent person holding a Nebraska teaching certificate with a coaching endorsement in 1995, when a player has sustained a possible head injury, was (1) to be familiar with the features of a concussion; (2) to evaluate the player who appeared to have suffered a head injury for the symptoms of a concussion; (3) to repeat the evaluation at intervals before the player would be permitted to reenter the game; and (4) to determine, based upon the evaluation, the seriousness of the injury and whether it was appropriate to let the player reenter the game or to remove the player from all contact pending a medical examination.

With regard to the conduct required under the standard of care, we note that Froiland testified that an evaluation procedure similar to that found appropriate by the district court was "good advice for coaches to follow." Elsewhere in the record, there is ample evidence to support the district court's finding that the conduct outlined above was required to meet the standard of care, and such finding is not clearly wrong.

### (b) Conformance With Standard of Care

In its evaluation of whether the coaches' conduct conformed to the standard of care, we note that the district court found that the evidence in the case showed that Bowman was familiar with the signs of a concussion. The district court found additional facts that showed that the coaches met the standard of care regarding evaluating Cerny at intervals and making their determination whether to permit Cerny to reenter the game.

The facts found by the district court include the following: The district court found that when Cerny removed himself from

the game, he told Bowman that he was fuzzy and had tingling in his neck. The district court found that Bowman talked to Cerny continuously for 5 to 6 minutes and observed that Cerny did not have a vacant stare, responded normally to conversation, did not appear to be disoriented or confused, and did not complain of nausea, headache, or blurred vision. The district court also found that the record demonstrated that Bowman observed and talked to Cerny approximately 15 minutes after his initial evaluation and that during this second observation, Bowman noted that Cerny was oriented, breathing normally, speaking coherently, and not complaining of headache, dizziness, vision problems, or nausea. The district court also found that Bowman observed Cerny on the sidelines during the third quarter and that Bowman noted that Cerny appeared to be "100% normal"; that his responses were appropriate; that he did not seem confused or disoriented; that his speech was not incoherent or slurred; that his emotions were appropriate; that he did not complain of dizziness, unsteadiness, nausea, or headache; and that he told the coach he felt "fine." Based upon the foregoing, the district court found that Bowman evaluated Cerny for symptoms of a concussion and that Cerny was evaluated at intervals. Further, the district court found that Cerny was properly allowed to reenter the game.

With regard to whether the conduct of the coaches met the standard of care, we note that the record contains Stineman's testimony, in which he stated that the evaluations and actions taken by Egger and Bowman regarding Cerny were reasonable for Nebraska endorsed coaches on September 15, 1995. According to Stineman, Bowman's evaluation of Cerny during the Beemer football game and Egger's decision to permit Cerny to reenter the game were the actions that would have been taken by a reasonable Nebraska endorsed football coach under similar circumstances in 1995.

Given its findings of fact summarized above, the district court determined, inter alia, that "the conduct of the coaches in this matter comported with the standard of care required of reasonable [sic] prudent persons holding a Nebraska teaching certificate with a coach's endorsement. The court finds no negligence on the part of [the School]."

Although we recognize that the record contains evidence that could controvert the district court's findings of fact, we are required to consider the evidence in a light most favorable to the School. See *Skinner v. Ogallala Pub. Sch. Dist. No. 1*, 262 Neb. 387, 631 N.W.2d 510 (2001). The district court's findings that the coaches' conduct met the standard of care and that the School was not negligent are supported by evidence and are not clearly wrong. Pursuant to our standard of review, we determine that there is sufficient evidence to sustain the district court's judgment.

Cerny's second, third, and fourth arguments are without merit. Further, we have considered all of Cerny's remaining arguments on appeal and determine that they are without merit.

## VI. CONCLUSION

For the reasons stated above, the decision of the district court finding in favor of the School and dismissing Cerny's petition is affirmed.

AFFIRMED.