2004 ND 158

**Gary A. FICEK and Rhonda K. Ficek,
Plaintiffs and Appellees**

v.

**James P. MORKEN and Carol
C. Morken, Defendants**

and

**The City of Fargo, Defendant
and Appellant.**

No. 20030295.

Supreme Court of North Dakota.

Aug. 4, 2004.

Ronald H. McLean (argued) and Timothy G. Richard (appeared), Serkland Law Firm, Fargo, ND, for plaintiffs and appellees.

Patricia Ann Roscoe, Assistant City Attorney (argued), and Garylle B. Stewart, City Attorney (appeared), Solberg Stewart Miller and Tjon, Fargo, ND, for defendant and appellant.

Jerald A. Hjelmstad, North Dakota League of Cities, Bismarck, ND, for amicus curiae.

David L. deCourcy, Falls Church, VA, and Garylle B. Stewart, City Attorney, Solberg Stewart Miller and Tjon, Fargo, ND, for amicus curiae International Code Council.

KAPSNER, Justice.

[¶ 1] The City of Fargo appealed from a judgment entered on a jury verdict awarding Gary A. Ficek and Rhonda K. Ficek $107,000 plus costs and disbursements in the Ficeks' action against James P. Morken, Carol C. Morken, and the City. We reject the City's invitation to adopt the public duty doctrine because it is incompatible with North Dakota law, and we conclude the district court did not err in instructing the jury that the City had a duty to properly inspect the construction of the Ficeks' residence and to enforce the building codes at the time the house was constructed. We affirm.

I

[¶ 2] In 1988 the Morkens began constructing a two-story addition to their home at 1831 Third Street North in Fargo. On June 27, 1988, the City issued the Morkens a building permit listing them as the "Contractor," and James Morken performed much of the construction work by himself, including forming and pouring a new foundation. During the approximately two-year period it took to complete the house, the City's building inspectors visited and inspected the house more than 40 times for compliance with the building code. On July 10, 1990, the City issued the Morkens a certificate of occupancy, certifying that the building met applicable building codes.

[¶ 3] The Ficeks purchased the house from the Morkens in May 1996, and as time passed, the Ficeks noticed problems with the home's construction. Experts inspected the home and determined it does not comply with the City's building code in several respects. The natural gas piping did not meet code requirements. Windows and roof vents were installed without proper flashing, siding had not been installed and sealed properly, and no vapor barrier existed in most of the interior walls, causing water leaks and condensation to form. The structural supports in the house were significantly overloaded and the house foundation did not have adequate frost depth footings. The structure was built on uncontrolled fill, causing the house to heave and settle in different directions and damaging the structure. In April 2002, a structural engineer advised the Ficeks to either fix the foundation of the house immediately or vacate the residence.

[¶ 4] The Ficeks brought this action against the Morkens and the City, asserting the City "owed a duty to ensure that all buildings are constructed according to relevant building codes and to properly inspect buildings under construction to ensure the builder is following all relevant building codes," and the City "breached its duty by negligently inspecting and approving the construction of the foundation of the subject residence, as said foundation does not meet the required building code." The Ficeks asserted the Morkens had committed constructive and actual fraud, breach of warranty, negligence, and consumer fraud. The Ficeks also sought equitable rescission and punitive damages from the Morkens.

[¶ 5]   During the trial, the City requested the following instruction based on the public duty doctrine:

## MUNICIPAL BUILDING INSPECTION

A municipality has the power, granted to it by law, to provide for the inspection of all building construction within the limits of the municipality.

### Duty of Municipality

Building codes, building permits, and building inspections are devices for the protection of the general public and are not for the specific benefit of an individual. The issuance of a building permit does not make a municipality an insurer against defective construction. Unless there is a special relationship between the plaintiffs and the municipality, the municipality owes no duty of care to insure compliance with the building code.

A special relationship requires that there be direct contact or privity with the public building official who, in response to a specific inquiry, represented that the building complied with the building code, coupled with reasonable reliance on that representation by the plaintiff.

Instead, the district court gave the jury an instruction fashioned after the Ficeks' requested instruction based on *Tom Beuchler Constr., Inc. v. City of Williston,* 392 N.W.2d 403 (N.D.1986):

### NEGLIGENT INSPECTIONS/APPROVAL—CITY OF FARGO

The City of Fargo owed a duty to the Ficeks and any other purchaser to properly inspect the construction of the house in this case and to enforce the building codes in force at the time the house was constructed. Because the City can only act through its employees, the City is liable for the negligence of its employees William Eide and Ronald Strand. The City of Fargo is liable for all damages proximately caused by its employees' negligent inspection and approval of the construction of the house as being in compliance with applicable building codes.

[¶ 6]   During closing arguments to the jury, the attorney for the City conceded the City was negligent but argued its negligence was not the proximate cause of the Ficeks' damages. The jury found in favor of the Ficeks on all claims. The jury found the Morkens and the City each 50 percent at fault in causing the Ficeks' damages in the amount of $214,000. The City appealed from the judgment entered against it, inclusive of costs and disbursements, for $133,821.89.

## II

[¶ 7]   The sole issue on appeal is whether the district court committed reversible error in instructing the jury that the City owed the Ficeks a duty to properly inspect the construction of the house and to enforce the applicable building codes at the time the house was constructed.

[¶ 8]   Jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury. *Nesvig v. Nesvig,* 2004 ND 37, ¶ 12, 676 N.W.2d 73. We review jury instructions as a whole to determine their correctness, and instructions will be allowed if, as a whole, they fairly advise the jury of the law on the essential issues in the case. *Rittenour v. Gibson,* 2003 ND 14, ¶ 15, 656 N.W.2d 691.

[¶ 9]   Actionable negligence consists of a duty on the part of the allegedly negligent party to protect the plaintiff

from injury, a failure to discharge that duty, and a resulting injury proximately caused by the breach of that duty. *Groleau v. Bjornson Oil Co., Inc.*, 2004 ND 55, ¶ 6, 676 N.W.2d 763. To establish a cause of action for negligence, the plaintiff must show the defendant had a duty to protect the plaintiff from injury. *Grewal v. North Dakota Ass'n of Counties*, 2003 ND 156, ¶ 9, 670 N.W.2d 336. Whether a duty exists is generally a question of law for the court, but if the existence of a duty depends upon the resolution of factual issues, the facts must be resolved by the trier of fact. *Iglehart v. Iglehart*, 2003 ND 154, ¶ 11, 670 N.W.2d 343. If no duty exists on the part of the alleged tortfeasor, there is no actionable negligence. *Diegel v. City of West Fargo*, 546 N.W.2d 367, 370 (N.D. 1996).

### A

[¶ 10] The City argues it owed no duty to the Ficeks because of the public duty doctrine.

[¶ 11] This Court has never adopted, or even specifically addressed, the public duty doctrine. Simply stated, under the public duty doctrine, when a statute or common law "imposes upon a public entity a duty to the public at large, and not a duty to a particular class of individuals, the duty is not one enforceable in tort." 1 D. Dobbs, *The Law of Torts* § 271, at p. 723 (2000) (footnote omitted) ("*Dobbs*"). The judicially-created public duty doctrine is rooted in a mid–19th century United States Supreme Court decision:

> The origin of the public duty doctrine can be traced to *South v. Maryland*, 59 U.S. (18 How.) 396, 15 L.Ed. 433 (1855). In *South*, the plaintiff alleged that he was kidnapped and held for a period of four days and released only when he secured the ransom money demanded by his kidnappers. He also asserted that

the local sheriff knew that he had been unlawfully detained yet did nothing to obtain his release. The plaintiff sued the sheriff for refusing to enforce the laws of the state and for failing to protect the plaintiff. The circuit court awarded plaintiff a substantial judgment. The Supreme Court reversed and declared that a sheriff's duty to keep the peace was "a public duty, for neglect of which he is amenable to the public, and punishable by indictment only." 59 U.S. (18 How.) at 403.

> The public duty doctrine was apparently accepted by most state courts in the late nineteenth and early twentieth centuries. The leading treatise on tort law during the era stated:

>> The rule of official responsibility, then, appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages.

> T. Cooley, *A Treatise on the Law of Torts* 379 (1879).

*Leake v. Cain*, 720 P.2d 152, 155 & n. 6 (Colo.1986).

[¶ 12] The public policy concerns underlying the public duty doctrine have been summarized in 18 E. McQuillin, *The Law of Municipal Corporations* § 53.04.25, at p. 199 (3rd ed. 2003) (footnotes omitted) ("*McQuillin*"):

> Courts give several reasons for the rule. First, it is impractical to require a public official charged with enforcement

or inspection duties to be responsible for every infraction of the law. Second, government should be able to enact laws for the protection of the public without exposing the taxpayers to open-ended and potentially crushing liability from its attempts to enforce them. Third, exposure to liability for failure to adequately enforce laws designed to protect everyone will discourage municipalities from passing such laws in the first place. Fourth, exposure to liability would make avoidance of liability rather than promotion of the general welfare the prime concern for municipal planners and policymakers. Fifth, the public duty rule, in conjunction with the special relationship exception, is a useful analytical tool to determine whether the government owed an enforceable duty to an individual claimant.

[¶ 13] A majority of jurisdictions appear to adhere to some form of the public duty doctrine. *See, e.g., Gordon v. Bridgeport Hous. Auth.*, 208 Conn. 161, 544 A.2d 1185, 1197 (1988); *Ruf v. Honolulu Police Dep't*, 89 Hawai'i 315, 972 P.2d 1081, 1091 n. 7 (1999); *Muthukumarana v. Montgomery County*, 370 Md. 447, 805 A.2d 372, 395 (2002); *Hoffert v. Owatonna Inn Towne Motel, Inc.*, 293 Minn. 220, 199 N.W.2d 158, 160 (1972); *Massee v. Thompson*, 321 Mont. 210, 90 P.3d 394, 403 (2004); *Beaver v. Gosney*, 825 S.W.2d 870, 873 (Mo.App.1992); *E.P. v. Riley*, 604 N.W.2d 7, 14 (S.D.1999); *Ezell v. Cockrell*, 902 S.W.2d 394, 399 (Tenn.1995); *Taylor v. Stevens County*, 111 Wash.2d 159, 759 P.2d 447, 450 (1988); *Holsten v. Massey*, 200 W.Va. 775, 490 S.E.2d 864, 873 (1997); Annot., *Modern status of rule excusing governmental unit from tort liability on theory that only general, not particular, duty was owed under circumstances*, 38 A.L.R.4th 1194, 1197 (1985); Annot., *Municipal liability for negligent performance of building inspector's duties*, 24 A.L.R.5th 200, 322 (1994); 18 *McQuillin* § 53.04.25, at p. 194.

[¶ 14] An exception to the public duty doctrine's immunity provision arises when a "special relationship" exists between the victim and the public official. *See Muthukumarana*, 805 A.2d at 394–95; *Massee*, 90 P.3d at 403.

> The public duty rule does not protect a municipality where there was a "special relationship" between a public official and a particular individual that gave rise to a duty to that individual separate from the official's duty to the general public. The special relationship rule is not only an exception to the public duty doctrine, but also to the tort principle that a person is not liable for the harm caused by others. Special duties can be grounded in reliance, dependence, or the creation by the public entity of a known risk. Courts have identified a variety of criteria which help identify a special relationship. These criteria include the following: direct contact between municipal agents and the plaintiff; an assumption by the municipality, through promises or actions, of an affirmative duty to act on the plaintiff's behalf; knowledge by the municipal agent that inaction could lead to harm; the plaintiff's justifiable reliance on the municipal agent, occurrence of the injury while the plaintiff is under the direct control of municipal agents, municipal action that increases the risk of harm, and the existence of a statute that imposes a duty to a narrow class of individuals rather than to the public at large.

18 *McQuillin* § 53.04.25, at pp. 199–203 (footnotes omitted). Under the public duty rule, courts generally hold that services such as inspections mandated by municipal building or fire codes or other inspection laws are services provided to the public in general and are not services ren-

dered to a particular individual. *Id.* at § 53.04.25, at p. 205; Annot., 24 A.L.R.5th 200, § 24, at p. 322.

## B

[¶ 15] In *Tom Beuchler Constr., Inc. v. City of Williston,* 392 N.W.2d 403 (N.D. 1986) (*"Beuchler I"*), the city leased four lots near an airport to a lessee who planned to build a hanger and office complex. The lease contained height restrictions on the development, but the contractor for the project was unaware of the restrictions. The city's building inspector approved the plans. After the project was substantially completed, the city informed the lessee and the contractor that the building was 10 feet higher than allowed under the lease and ordered the lessee to remove the building. The lessee sued the city for negligent issuance of the building permit, and the district court dismissed the action, concluding the building inspector had no duty to check the restrictive covenant in the lease.

[¶ 16] This Court reversed and remanded, concluding "a building inspector's duty is not limited solely to ensuring compliance with the Uniform Building Code but comports with the general principles of negligence to exercise reasonable care under the circumstances in issuing a building permit. *J & B Development Co. Inc. v. King County,* 100 Wash.2d 299, 669 P.2d 468 (1983)." *Beuchler I,* 392 N.W.2d at 405–06. On remand, the city was held liable for damages and this Court affirmed, concluding the law of the case doctrine precluded the city from raising the defense of governmental immunity in the second appeal. *See Tom Beuchler Constr., Inc. v. City of Williston,* 413 N.W.2d 336, 339 (N.D.1987) (*"Beuchler II"*). The public duty doctrine was not mentioned in either *Beuchler I* or *Beuchler II.*

[¶ 17] In *Myers v. Moore Eng'g, Inc.,* 42 F.3d 452 (8th Cir.1994), the Eighth Circuit Court of Appeals considered the *Beuchler* decisions in an appeal from a summary judgment dismissing an action against a city and its building inspector. The trial court had concluded the city, in inspecting buildings and issuing building permits, did not owe the plaintiffs a duty as members of the general public. The plaintiffs argued *Beuchler I* established that the city, in performing building inspections and in issuing building permits, owed a duty of reasonable care to all future owners and users of the buildings. The Eighth Circuit disagreed, predicted that this Court would adopt the public duty doctrine, and affirmed the summary judgment.

[¶ 18] The Eighth Circuit agreed with the trial court that *"Beuchler* is a classic case of special relationship or duty," and noted that *J & B Dev. Co.,* which this Court relied upon for the duty proposition in *Beuchler I,* had been expressly overruled by the Washington Supreme Court in *Taylor,* 759 P.2d at 452. *Myers,* 42 F.3d at 456. The Eighth Circuit stated:

> After reviewing *Beuchler* and *Taylor,* the district court concluded that, if presented with the issue raised in this case, the North Dakota Supreme Court would distinguish *Beuchler.* The facts in *Beuchler* satisfy the special relationship criteria defined in *Taylor* and other cases—there was privity of contract, direct personal contact between plaintiff and the building inspector, a specific request for and assurances of compliance, and reasonable reliance on the inspector's assurances and the building permit. Because there was no such special relationship between appellants and the City in this case, the district court concluded that the Supreme Court of North Dakota would adopt the approach of either the majority or concurring jus-

tices in *Taylor* and hold that the City owed no duty to appellants.

We agree with the district court that the Supreme Court of North Dakota would likely construe its decision in *Beuchler* so as to keep this aspect of municipal tort liability in line with the majority rule that is followed in Minnesota and South Dakota, much as the Supreme Court of Washington in *Taylor* limited its earlier decision in *J & B Dev. Co. Id.* at 456–57.

[¶ 19] The City urges that we construe *Beuchler I* as did the Eighth Circuit Court of Appeals in *Myers,* adopt the public duty doctrine, and conclude as a matter of law that it owed no duty to the Ficeks in this case.

C

[¶ 20] "While a sizeable number of jurisdictions still adhere to the public duty rule, ... the trend has been to abolish the rule." *Jean W. v. Commonwealth,* 414 Mass. 496, 610 N.E.2d 305, 312 (1993) (Liacos, C.J., concurring) (footnote omitted). *See, e.g., Adams v. State,* 555 P.2d 235, 241 (Alaska 1976); *Ryan v. State,* 134 Ariz. 308, 656 P.2d 597, 599 (1982); *Leake,* 720 P.2d at 160; *Martinez v. City of Lakewood,* 655 P.2d 1388, 1390 (Colo.App.1982); *Commercial Carrier Corp. v. Indian River County,* 371 So.2d 1010, 1015 (Fla.1979); *Wilson v. Nepstad,* 282 N.W.2d 664, 674 (Iowa 1979); *Maple v. City of Omaha,* 222 Neb. 293, 384 N.W.2d 254, 260 (1986); *Schear v. Board of County Comm'rs,* 101 N.M. 671, 687 P.2d 728, 731 (1984); *Thompson v. Waters,* 351 N.C. 462, 526 S.E.2d 650, 652 (2000); *Wallace v. Ohio Dept. of Commerce,* 96 Ohio St.3d 266, 773 N.E.2d 1018, 1032 (2002); *Brennen v. City of Eugene,* 285 Or. 401, 591 P.2d 719, 725 (1979); *Hudson v. Town of East Montpelier,* 161 Vt. 168, 638 A.2d 561, 566 (1993); *Coffey v. City of Milwaukee,* 74 Wis.2d 526, 247 N.W.2d 132, 139 (1976); *Natrona County v. Blake,* 81 P.3d 948, 956 (Wyo. 2003). *See also Prosser and Keeton on the Law of Torts* § 131, at p. 1049 (5th ed. 1984) (footnote omitted) (noting the foundations of the public duty doctrine "may have been eroded in part by a number of decisions that have rejected, discounted or narrowed the scope of that doctrine"); *Dobbs* § 271, at p. 725 (footnote omitted) (noting "[i]n a few states, contemporary courts have rejected the public duty doctrine altogether"); 18 *McQuillin* § 53.04.25, at p. 206 (footnote omitted) (noting the "public duty rule has been abrogated or limited in a number of jurisdictions").

[¶ 21] Courts have relied on several reasons for abrogating or refusing to adopt the public duty doctrine. First, the "major criticism leveled at the public duty rule is its harsh effect on plaintiffs who would be entitled to recover for their injuries but for the public status of the tortfeasor." *Leake,* 720 P.2d at 159. There has been a "reasoned reluctance to apply a doctrine that results in a duty to none where there is a duty to all." *Schear,* 687 P.2d at 731. *See also Martinez,* 655 P.2d at 1390 (recognizing application of the "public duty—special duty dichotomy results in 'a duty to none where there is a duty to all' "); *Commercial Carrier Corp.,* 371 So.2d at 1015 (recognizing " 'general duty'-'special duty' dichotomy" and stating it is "circuitous reasoning to conclude that no cause of action exists for a negligent act or omission by an agent of the state or its political subdivisions where the duty breached is said to be owed to the public at large but not to any particular person"); *Jean W.,* 610 N.E.2d at 313 (noting "[j]udges and commentators criticizing the rule have focused on the unfairness inherent in a rule that results in a duty to none when there is a duty to all, and pointed out

the tortured analyses that result when courts seek to avoid such harsh results without squarely facing the underlying problem").

[¶ 22] Second, courts have said the public duty doctrine "creates needless confusion in the law and results in uneven and inequitable results in practice." *Leake*, 720 P.2d at 159. *See also Ryan*, 656 P.2d at 599 (stating "[w]e shall no longer engage in the speculative exercise of determining whether the tort-feasor has a general duty to the injured party, which spells no recovery, or if he had a specific individual duty which means recovery.... [T]he parameters of duty owed by the state will ordinarily be coextensive with those owed by others"); *Jean W.*, 610 N.E.2d at 313 (noting Massachusetts courts, like " 'other courts, have not managed to draw an intellectually defensible line between immune "public" duties and actionable negligence' "); *Maple*, 384 N.W.2d at 260 (refusing to engage in " 'speculative exercise' "); *Hudson*, 638 A.2d at 566 (noting the public duty doctrine "is confusing and leads to inequitable, unpredictable, and irreconcilable results").

[¶ 23] Third, courts have reasoned that, "although the doctrine is couched in terms of duty rather than liability, in effect, it resurrects the governmental immunities that have been abrogated or limited by most jurisdictions over the last thirty-five years." *Hudson*, 638 A.2d at 566. *See also Ryan*, 656 P.2d at 598 (noting the public duty doctrine "is the old proprietary-governmental distinction in a bright new word-package"); *Leake*, 720 P.2d at 160 (noting "the effect of the rule is identical to that of sovereign immunity. Under both doctrines, the existence of liability depends entirely upon the public status of the defendant"); *Schear*, 687 P.2d at 731 (holding "the 'public duty-special duty' rule has no viability outside the context of sov-ereign immunity"); *Thompson*, 526 S.E.2d at 651 (noting in "some states where sovereign immunity has been either legislatively or judicially abrogated, courts have abandoned the public duty doctrine as another form of sovereign immunity"); *Coffey*, 247 N.W.2d at 139 (noting the " 'public duty'— 'special duty' distinction ... set[s] up just the type of artificial distinction between 'proprietary' and 'governmental' functions which this court sought to dispose of in" abrogating governmental immunity) *Natrona County*, 81 P.3d at 954 (noting the "public-duty/special-duty rule was in essence a form of sovereign immunity and viable when sovereign immunity was the rule").

[¶ 24] Fourth, courts have reasoned "the underlying purposes of the public duty rule are better served by the application of conventional tort principles and the protection afforded by statutes governing sovereign immunity than by a rule that precludes a finding of an actionable duty on the basis of the defendant's status as a public entity." *Leake*, 720 P.2d at 158. *See also Ryan*, 656 P.2d at 599 (noting "plaintiffs still must show that a duty was owed to the plaintiff, that this duty was breached, and that an injury was proximately caused by the breach"); *Jean W.*, 610 N.E.2d at 313 (noting concerns over excessive financial burdens are addressed by the language of the tort claims act and "traditional tort principles"); *Maple*, 384 N.W.2d at 260 (noting "plaintiff still must show that a duty was owed to him, that this duty was breached, and that an injury was proximately caused by that breach"); *Wallace*, 773 N.E.2d at 1031 (noting "conventional negligence principles already provide some measure of protection against the possibility of the state becoming the de facto guarantor of every injury somehow attributable to the actions of a state tortfeasor" and that a "state defendant, just like any private defendant, re-

mains protected by traditional tort concepts of duty, including foreseeability and pertinent public-policy considerations"); *Hudson*, 638 A.2d at 566 (noting "concerns over excessive government or public employee liability are baseless considering the limitations on liability afforded by conventional tort principles, various types of official immunity, or exceptions to waivers of sovereign immunity").

[¶ 25] Fifth, and foremost, numerous courts have ruled that the public duty doctrine is simply incompatible with tort claims acts mandating that suits against public defendants be determined in accordance with rules of law applicable to private persons. In *Adams*, 555 P.2d at 241–42 (footnote omitted), the court said:

[W]e consider that the "duty to all, duty to no-one" doctrine is in reality a form of sovereign immunity, which is a matter dealt with by statute in Alaska, and not to be amplified by court-created doctrine. An application of the public duty doctrine here would result in finding no duty owed the plaintiffs or their decedents by the state, because, although they were foreseeable victims and a private defendant would have owed such a duty, no "special relationship" between the parties existed. Why should the establishment of duty become more difficult when the state is the defendant? Where there is no immunity, the state is to be treated like a private litigant. To allow the public duty doctrine to disturb this equality would create immunity where the legislature has not.

*See also Leake*, 720 P.2d at 159 (noting "[i]n apparent contravention of [tort claims] statutes, the public duty rule makes the public status of the defendant a crucial factor in determining liability"); *Martinez*, 655 P.2d at 1390 (noting the "concept of a public duty cannot stand either with the enactment of the statute

abrogating sovereign immunity, nor in instances where there is a common law duty of a public entity to the plaintiff"); *Commercial Carrier Corp.*, 371 So.2d at 1016 (stating "a plain reading of the statute" precludes construction that public duty doctrine survived statute's enactment); *Jean W.*, 610 N.E.2d at 312 (stating "[b]y recognizing that the public duty rule is incompatible with the [tort claims] Act, we align ourselves with most jurisdictions that have squarely considered the issue"); *Maple*, 384 N.W.2d at 260 (noting "[n]owhere [in tort claims act] is there found an exemption for the exercise of a duty owed to the public generally"); *Schear*, 687 P.2d at 730, 734 (stating "[n]othing in the [tort claims] statute refers to performance of either public or special duties" and refusing to "breathe new life into a rule which, as a ghost of sovereign immunity, operates as a denial of a cause of action and is inconsistent with . . . [the] Act"); *Wallace*, 773 N.E.2d at 1028 (holding "the public-duty rule is incompatible with [tort claims statute's] express language requiring that the state's liability . . . be determined 'in accordance with the same rules of law applicable to suits between private parties'"); *Brennen*, 591 P.2d at 725 (stating "the Legislature specifically provided for certain exceptions under which immunity would be retained, . . . and we find no warrant for judicially engrafting an additional exception onto the statute"); *Natrona County*, 81 P.3d at 954 (holding the "public duty only rule, if it ever was recognized in Wyoming, is no longer viable").

[¶ 26] In rejecting the "superficial appeal" of an argument that a statute mandating governmental liability be determined in accordance with rules of law applicable to suits between private parties is compatible with the public duty doctrine because private persons do not possess public duties, the court in *Wal-*

*lace,* 773 N.E.2d at 1026–27, 1028 (footnote omitted), reasoned:

> To accept the state's contention that the public-duty rule is applicable here because it "determines whether a defendant has any duty to begin with" ignores a vital feature of the doctrine that is incompatible with R.C. 2743.02(A)(1). The applicability of the public-duty rule depends upon the public status of the particular defendant raising it as a bar to liability. In other words, only *governmental* entities and their employees may rely on the rule. It is spurious logic to conclude that a doctrine that is, by definition, available only to *public* defendants can be consistent with a statute mandating that suits be determined in accordance with rules of law applicable to *private* parties.... Given the unambiguous directive of R.C. 2743.02(A), there is no legal or logical basis to conclude that the public-duty rule, which is by definition unavailable to private litigants, can apply to suits against the state in the Court of Claims.

*See also Commercial Carrier Corp.,* 371 So.2d at 1017 (refusing "to place such a gloss on our waiver statute" because "[t]o do so would be to essentially emasculate the act and the salutary purpose it was intended to serve"); *Jean W.,* 610 N.E.2d at 312 (noting the "fact that a public employee's employment imposes on him an affirmative duty to act where a private person would not have such a duty does no more than identify the source of the duty").

### D

[¶ 27] In *Kitto v. Minot Park Dist.,* 224 N.W.2d 795 (N.D.1974), this Court abolished the doctrine of governmental immunity of political subdivisions, concluding the doctrine had a judicial basis and was not mandated by the state constitution. In doing so, this Court "retain[ed] no distinc-tion between governmental and proprietary functions." *Id.* at 797. In 1977 the Legislature enacted N.D.C.C. ch. 32–12.1 to limit the liability of political subdivisions in the wake of the *Kitto* decision. *See Binstock v. Fort Yates Pub. Sch. Dist.,* 463 N.W.2d 837, 841 (N.D.1990). Preceding a list of specific limitations on and exceptions to political subdivision liability, N.D.C.C. § 32–12.1–03(1) provides:

> Each political subdivision is liable for money damages for injuries when the injuries are proximately caused by the negligence or wrongful act or omission of any employee acting within the scope of the employee's employment or office under circumstances where the employee would be personally liable to a claimant in accordance with the laws of this state, or injury caused from some condition or use of tangible property, real or personal, under circumstances where the political subdivision, if a private person, would be liable to the claimant.

This legislation resulted from an interim study by the Committee on Political Subdivisions of the North Dakota Legislative Council, *see Nelson v. Gillette,* 1997 ND 205, ¶ 32 n. 2, 571 N.W.2d 332, and the committee intended that "public employees be held liable for their intentional or malicious acts to make them accountable to the public they serve." Report of the North Dakota Legislative Council, Forty–Fifth Legislative Assembly, 1977, at p. 175.

[¶ 28] We are persuaded by the reasoning of the minority view and refuse to adopt the public duty doctrine as a part of North Dakota law. Section 32–12.1–03(1), N.D.C.C., specifically provides that political subdivisions are liable for damages caused by an employee's negligence "under circumstances where the employee would be personally liable to a claimant in accordance with the laws of this state." The statute contains no exceptions for

"public duties," creates no distinction between "public duties" and "special duties," and our review of the statute's legislative history reveals no indication that public duties in general were intended to be excepted from liability. Indeed, N.D.C.C. § 32–12.1–03(3)(d), which specifically excepts a political subdivision from liability for fire protection activities, cuts against such an interpretation. *See also* N.D.C.C. § 18–10–17.

[¶ 29] We recognize that *J & B Dev. Co.*, relied upon in *Beuchler I*, has been overruled by the Washington Supreme Court, but other jurisdictions continue to recognize potential liability under similar circumstances regardless of the public duty doctrine. *See* Annot., 24 A.L.R.5th 200, § 49, at p. 322, and cases collected therein. Furthermore, the Eighth Circuit Court of Appeals, when predicting in *Myers* that this Court would adopt the public duty doctrine, did not consider N.D.C.C. § 32–12.1–03(1).

[¶ 30] We also recognize that good public policy arguments can be made for excepting a political subdivision from liability under the circumstances of this case, but those arguments are more appropriately addressed to the legislature rather than to the judiciary. In *Rodenburg v. Fargo–Moorhead YMCA*, 2001 ND 139, ¶ 29, 632 N.W.2d 407, we said:

> "Our function is to interpret the statute.... 'The justice, wisdom, necessity, utility and expediency of legislation are questions for legislative, and not for judicial determination.'" *Stokka v. Cass County Elec. Coop., Inc.*, 373 N.W.2d 911, 914 (N.D.1985) (quoting Syllabus ¶ 11, *Asbury Hospital v. Cass County*, 72 N.D. 359, 7 N.W.2d 438 (1943)). The legislature is much better suited than courts to identify or set the public policy in this state. *Haff v. Hettich*, 1999 ND 94, ¶ 22, 593 N.W.2d 383; *Martin v.*

*Allianz Life Ins. Co.*, 1998 ND 8, ¶ 20, 573 N.W.2d 823. "[T]he legislature 'can do studies, gather evidence, hold hearings, and come to a decision' and 'broad public policy issues are best handled by legislatures with their comprehensive machinery for public input and debate' (citations and quotations omitted)." *Allianz*, 1998 ND 8, ¶ 20, 573 N.W.2d 823. If the legislature believes certain activities conducted by political subdivisions require more stringent protection than the limitations currently provided in N.D.C.C. ch. 32–12.1, it may provide that protection. *See, e.g., Jean W.*, 610 N.E.2d at 314; *Wallace*, 773 N.E.2d at 1029.

[¶ 31] We conclude the public duty doctrine is incompatible with North Dakota law and we refuse to adopt it. The City's sole complaint in this case is that the district court instructed the jury based on *Beuchler I* rather than on the public duty doctrine. We conclude the challenged jury instruction correctly and adequately informed the jury of the applicable law.

### III

[¶ 32] The judgment is affirmed.

[¶ 33] MARY MUEHLEN MARING, and WILLIAM A. NEUMANN, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 34] Because I believe the public duty doctrine is contrary to the wording in N.D.C.C. § 32–12.1–03(1), I concur in the majority opinion. I do so with the understanding, at least my understanding, that a certification a building meets applicable building codes of the issuing governmental entity is not a guarantee there are no defects in that building or, if there are defects, that the issuing governmental entity is not automatically liable. The rheto-

ric at least, if not the results, in the cases cited at ¶ 24 in the opinion for the Court by Justice Kapsner support that understanding. *Cf. Fast v. State*, 2004 ND 111, 680 N.W.2d 265 (holding no liability for fall on icy sidewalk).

[¶ 35] Many of the cases cited in support of the "minority" position, *i.e.*, that no public duty doctrine should be adopted, wax eloquently about the proposition that a governmental entity should not be immune from liability for injury to one of its citizens when liability attaches if the same injury is caused by a private citizen. Section 32–12.1–03(1), N.D.C.C., says as much. It may be that such a formula overlooks the much greater responsibility placed on the governmental entity by statute or the responsibility voluntarily assumed by the governmental entity. I am concerned that if the exposure of the governmental entity, because of its responsibility to protect the public from all manner of perceived ills, is too great the inclination will be to reduce the exposure by reducing the protections or limiting them to only minimal requirements. Neither is necessarily good public policy in my mind.

[¶ 36] An example of a comparable situation is found in N.D.C.C. ch. 53–08, which was enacted to encourage landowners to open their land to the public for recreational purposes by limiting the liability of the landowners for injuries. *Olson v. Bismarck Parks & Recreation Dist.*, 2002 ND 61, 642 N.W.2d 864. *But see Hovland v. City of Grand Forks*, 1997 ND 95, 563 N.W.2d 384 (applying recreational use statute to political subdivision liability statute would circumvent legislature's intent under N.D.C.C. § 32–12.1–03). It may be necessary to reduce the liability to an individual in order to obtain other desirable benefits for the general public. But, it is for the Legislature to weigh conflicting public policy arguments and to enact accordingly.

[¶ 37] DALE V. SANDSTROM, J., concurs.